Prisoner's Name: Ramon Dominguez

Prisoner's Number: R03465

Place of Confinement: Pinckneyville Correctional Center

## IN THE
## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RAMON DOMINGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | No. 07 -8 31 - JPG |
| | ) | |
| vs. | ) | |
| | ) | |
| DAN AUSTIN, Warden, | ) | |
| and LISA MADIGAN, The Attorney General of | ) | |
| the State of Illinois, | ) | Case Number of State |
| | ) | Court Conviction: 99 CF 1830 |
| Respondents. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

**NOW COMES** the Petitioner, RAMON DOMINGUEZ, by his attorneys, Stone & Associates, and moves this Honorable Court pursuant to 28 U.S.C. § 2254 to enter an order granting Habeas Corpus. In support, the Petitioner alleges and states as follows:

## THE NATURE OF THIS CASE

Ramon Dominguez, while fooling around with a loaded pistol, shot and killed his wife. He was prosecuted for first degree murder. His defense at trial was that his conduct was reckless, accidentally killing his wife while playing with a loaded gun. A jury found Ramon guilty of first degree murder. In post trial proceedings, before the trial judge, that judge conceded that he was heartbroken by the fact that Ramon's lawyers failed to offer the jurors a lesser-included instruction that would have spared Ramon from a "truth-in-sentencing" murder sentence of 100% of the twenty-eight years imposed. Had his lawyers offered the involuntary manslaughter instruction, the trial judge would have given it. A verdict of guilty on involuntary manslaughter, under Illinois law would have resulted in a sentence of between 2 and 5 years in prison, to be served with day-for-day (50%) credit. Despite the judge expressing sympathy for defendant's position, no relief was granted. Ramon is serving a murder sentence for his reckless conduct. Justice demands federal intervention and the granting of the Writ.

1

## PROCEDURAL HISTORY

1.      The name and location of the state court that entered the judgment of conviction and sentence under attack are:

      (a)      The Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois;

      (b)      Waukegan, Illinois.

2.      The date of judgment of conviction is March 26, 2001.

3.      The offense involved is first degree murder, as follows: that the defendant performed the acts which caused the death of Martha Reyes; that when the defendant did so (A), he intended to kill or do great bodily harm to Martha Reyes, or (B), he knew that his acts created a strong probability of death or great bodily harm to Martha Reyes.

4.      Ramon Dominguez is sentenced to serve twenty-eight (28) years in the Illinois Department of Corrections.

5.      Ramon Dominguez plead not guilty to all charges.

6.      Ramon Dominguez was convicted in a jury trial.

7.      Ramon Dominguez did not testify at his trial.

8.      Ramon Dominguez appealed his conviction and sentence to the Illinois Appellate Court for the Second District.  The Appellate Court issued a published opinion in this matter on June 28, 2002. *People v. Dominguez*, 331 Ill.App.3d 1006, 773 N.E.2d 1167 (2nd Dist. 2002). On July 30, 2002, the Appellate Court denied Mr. Dominguez' Petition for Rehearing.  On September 3, 2002, Mr. Dominguez filed a Petition for Leave to Appeal with the Illinois Supreme Court.  The Illinois Supreme Court denied that petition and appeal on December 05, 2002. *People v. Dominguez*, 202 Ill.2d 627, 787 N.E.2d 161 (2002).

9.      On June 5, 2003, Mr. Dominguez filed a timely post-conviction petition in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois.

10.      The grounds raised in Ramon Dominguez' post-conviction petition distilled down to four areas:

      a)      Ramon Dominguez was denied the effective assistance of counsel when trial counsel failed to tender to the trial court or recommend to defendant that the jury be offered a lesser included offense instruction of involuntary manslaughter.  Ramon Dominguez was further denied the right of a fair

trial when the trial court did not issue *sua sponte* the lesser included offense instruction;

b)     Ramon Dominguez was denied effective assistance of counsel when his counsel failed to have an independent examination conducted on the alleged murder weapon;

c)     Ramon Dominguez was denied the effective assistance of counsel when counsel failed to use an interpreter when discussing with Mr. Dominguez the possibility of tendering the lesser included offense instruction; and

d)     Ramon Dominguez was denied the effective assistance of counsel when trial counsel failed to investigate Mr. Dominguez' mental health and fitness for trial. Additionally, Ramon Dominguez' rights were violated under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215 (1963) by the State's failure to disclose that Mr. Dominguez was medicated with psychotropic drugs while incarcerated at the county jail pending trial.

11.     On August 5, 2003, the Circuit Court ordered Ramon Dominguez' post-conviction petition dismissed. He appealed the Circuit Court's order. In a published decision on March 10, 2005, the Illinois Appellate Court for the Second District reversed the Circuit Court's order on the grounds that Mr. Dominguez met the threshold standard for going forward on his post-conviction petition, his allegations were not rebutted by the record and his trial counsel was ineffective for not tendering or recommending an involuntary manslaughter instruction. *People v. Dominguez*, 356 Ill.App.3d 872, 824 N.E.2d 1232 (2nd Dist. 2005). The matter was remanded to the Circuit Court.

12.     The State filed a Petition for Leave to Appeal to the Illinois Supreme Court challenging the Appellate Court's decision. On September 29, 2005, the Illinois Supreme Court denied the State's Petition for Leave to Appeal. In the same order, the Illinois Supreme Court exercised its supervisory authority in directing the Illinois Appellate Court, Second District to vacate its March 10, 2005 decision (*People v. Dominguez*, 356 Ill.App.3d 872, 824 N.E.2d 1232) and reconsider in light of the Illinois Supreme Court's decision in *People v. Blair*, 215 Ill.2d 427, 831 N.E.2d 604 (2005).

13.     On remand for reconsideration, the Illinois Appellate Court, Second District published a decision on June 27, 2006. *People v. Dominguez*, 266 Ill.App.3d 468, 851 N.E. 894 (2nd Dist. 2006). The court held, *inter alia*, that *res judicata* barred Mr. Dominguez from arguing ineffective assistance of counsel for failing to tender the lesser-included instruction and that Mr. Dominguez failed to establish prejudice in counsel's alleged failure to investigate his mental health.

14.     On November 29, 2006, the Illinois Supreme Court denied Mr. Dominguez Petition for Leave to Appeal in an unwritten opinion. *People v. Dominguez*, 222 Ill.2d 583, 861 N.E.2d 658 (2006).

## STATEMENT OF FACTS

15.     This cause provides a rare glimpse into injustice. It is not every day when a trial judge states in open court that an injustice has occurred; that he is sympathetic; that his heart is broken because of it. (R. 1619-1620). That is what the trial judge said about Ramon Dominguez' case. But the judge did nothing to right the wrong. Despite those feelings the trial judge believed his hands were tied by the law to correcting the injustice. (R. 1619-1620). The judge, in open court, told post-conviction counsel for Ramon Dominguez that he agreed a lesser included instruction of involuntary manslaughter should have been offered. The judge though felt the law prevented him from doing anything about it. (R. 1619-1620). Ramon Dominguez still stands convicted of first degree murder. Mr. Dominguez was sentenced to twenty-eight (28) years in prison (of which 100% must be served pursuant to Illinois' "truth-in-sentencing" statute). This is contrasted with the punishment Mr. Dominguez would have received if convicted of involuntary manslaughter – a penalty of two (2) to five (5) years in prison with day-for-day (50%) good time credit.

16.     Ramon Dominguez is a Mexican immigrant whose English language skills are poor. (C. 179, 214). Neither of his defense lawyers spoke Spanish. (C. 216). At critical points of their representation, the lawyers failed to utilize services of an interpreter. (C. 216). No matter what the conversation, no matter how legally intricate, no matter how important, trial counsel did not utilize an interpreter. In fact, trial counsel never took any steps to ensure that their client understood them and understood the legal process that was unfolding.

17.     Mr. Dominguez complained to a priest that he did not understand his lawyers, the legal process or the trial that convicted him. (C. 217; R. 1150, 1152). The priest told the defense lawyers the problem. (C. 217). Nothing was done. (C. 217).

18.     Without the knowledge of his lawyers, Ramon Dominguez was given anti-psychotic drugs while at the County Jail. The medical staff noted depression and Ramon complained of auditory hallucinations. No fitness hearing was held pre-trial. No psychological evaluations were conducted. Mr. Dominguez later said that the medication clouded his head and kept him from testifying. (R. 1323, 1354, 1356).

19.     Ramon Dominguez went to trial under those conditions.

20.     Decisions specifically reserved for Mr. Dominguez were made by his trial attorneys without Mr. Dominguez' participation in the decision making process and without his informed consent. Under Illinois law, the decision of whether to tender a lesser included instruction is solely reserved for the defendant. Mr. Dominguez was deprived of effective assistance of trial counsel when his trial lawyers imposed their will upon him and made the unilateral decision not to instruct the jury on the law of involuntary manslaughter. (C. 203). Further, this process of imposing a lawyer's will upon a client was exacerbated by the language difficulties of this case. Neither defense counsel spoke the Spanish language. (C. 216). Ramon Dominguez spoke, thought, and acted in Spanish. His English was poor. (C. 203). At no time when the lawyers were making their decision to present the case as a murder case to the jury

4

without a lesser included instruction of involuntary manslaughter did the lawyers utilize a Spanish language interpreter to discuss with Ramon Dominguez his option to fully and fairly instruct the jury on the law. (C. 203). Nor did the lawyers ever speak to their client in Spanish. (C. 216).

21.    After the trial and conviction, but before sentencing, new counsel entered the case to represent Mr. Dominguez.

22.    New counsel discovered some important facts that were never brought to light at the trial. These facts were raised immediately upon their discovery by the new defense counsel.

23.    First, the defense presented testimony from a Spanish-speaking priest, Father Mike Boehm, who pastored to Mr. Dominguez in Spanish while he was in the county jail. (R. 1153). Father Boehm believed that Mr. Dominguez was not understanding what was occurring with the case. (R.1150). Mr. Dominguez told Father Boehm that the shooting was an accident. (R. 1155). He asked about manslaughter on two occasions when trial was close. (R. 1156-57). Mr. Dominguez told Father Boehm that he was confused. (R. 1152, 1160). Based on his observations, Father Boehm testified that anything which involved any type of detailed concentration in a conversation, Mr. Dominguez would have definite problems speaking about the subject in English. (R. 1163-64). Mr. Dominguez would reiterate that he was perplexed by the issues in his case. (R. 1152). Before the trial began, Mr. Dominguez expressed to Father Boehm that he was having difficulty understanding his lawyers because they spoke English to him. (C. 218; R. 1152). Father Boehm went to defense counsel multiple times to express his concern. (C. 217-18; R. 1152). Counsel never responded. (C. 217-18; R. 1152).

24.    Also, post-trial defense counsel learned for the first time that, while at the jail pending and throughout his trial, Mr. Dominguez had been medicated with psychotropic and anti-psychotic drugs. Neither the defense nor the court was ever informed of the medication being given to Mr. Dominguez. Mr. Dominguez was being given a psychotropic medication, Elavil, and had been taking it during his trial. (R. 1044). Post trial counsel told the trial judge that Ramon Dominguez was unfit and needed a fitness hearing. (R. 1049). Despite issues regarding Mr. Dominguez' fitness, the trial judge proceeded to the post-trial motion hearing finding no *bona fide* doubt of the defendant's fitness to stand sentencing. With respect to the post-trial hearing the trial court stated, "I don't think you need your client's input right now with respect to your legal argument." (R. 1049).

25.    According to the medical records at the jail, Mr. Dominguez was prescribed Thorazine pre-trial. (R. 1282). Expert testimony revealed that Thorazine is used as a major sedative or an anti-psychotic medication. (R. 1283). Mr. Dominguez was also prescribed Trazodone which is another mood stabilizing, sedative-type of medication, also used as an anti-psychotic. (R. 1283).

26.    Mr. Dominguez' trial counsel admitted the following in post-trial hearings: that they presented the issue of the lesser-included instruction to Mr. Dominguez in a quick discussions in the courtroom (R.1132-33); trial counsel did not use an interpreter to explain the issue to Mr. Dominguez (R.1132-33); they did not use an interpreter for any of their meetings

with Mr. Dominguez during the trial (R. 1104); they spoke only English with Mr. Dominguez (R. 1104); Mr. Dominguez did not speak English as well as a native speaker and usually spoke in single syllables (R. 1096-97); they believed Mr. Dominguez understood them, but never asked Mr. Dominguez to explain anything in his own words (R. 1099); Mr. Dominguez would try and speak English with them, but "threw in some Spanish" (R. 1104); Mr. Dominguez was not fluent in English and spoke mostly in "yeses and nos." (R. 1109).

27.    Trial counsel admitted: "Thus, **it would have been my ultimate decision**, I guess, not to [offer the instruction]. . ." (R. 1141) (emphasis added).

28.    In denying the post trial motion, the trial court "thought there were facts that supported that action"—to offer a lesser included offense of involuntary manslaughter. (R. 1411). However, the trial court found that Mr. Dominguez rejected the instruction. (R. 1412).

29.    A review of the record in this case shows that Mr. Dominguez was prohibited through the actions of his trial counsel to participate in his murder trial to the extent the law mandates. His trial counsel was ineffective and violated Mr. Dominguez' constitutional right to a fair trial and to effective representation at the critical stages of the proceedings. The accumulation of the errors and violations can no longer be ignored. They include:

- Mr. Dominguez' lack of comprehension of the English language compounded by the failure of his attorneys to provide interpretation of important legal concepts and to ensure Mr. Dominguez was informed to make the decisions reserved to him;
- His lack of understanding of the trial process and his options;
- The overwhelming questions of his mental fitness for trial that have long been ignored and the failure by his attorneys to investigate his background of mental instability and lack of fitness to be tried (made worse by the trial court's denial of a hearing to determine Mr. Dominguez' fitness);
- The fact that Mr. Dominguez was given anti-psychotic and psychotropic drugs without the knowledge of his lawyers or the trial judge before and during the trial process; and
- The overall failure of his attorneys to present any evidence in defense of Mr. Dominguez and worse, that his lawyer's only argument to the jury was that the shooting and killing of his wife was a reckless act, an accident with a loaded pistol and **never** offered the lesser included instruction of involuntary manslaughter.

30.    The elements of the offense called for a jury instruction of involuntary manslaughter. Under Illinois law, where a person recklessly discharges a weapon and unintentionally kills another without lawful justification, the crime is not murder but involuntary manslaughter. 720 ILCS 5/9-3 (West 2001). No such instruction for involuntary manslaughter was given to the jury. Mr. Dominguez found himself at the mercy of an all-or-nothing-at-all jury instruction (either he was to be found guilty of First Degree Murder or acquitted). He was not availed of the opportunity or his right to intelligently discuss the option of a lesser-included instruction with his attorneys or with the court.

6

**Evidence At Trial**

31.    Petitioner incorporates paragraphs 1-30 by reference.

32.    Ramon Dominguez was married to Martha Reyes at the time of the incident. They had two children and lived in North Chicago, Illinois. (R. 493).

33.    On May 28, 1999, Martha Reyes was killed by a single gunshot wound. (R. 889). Mr. Dominguez fired the shot that killed her. The gun, held by Mr. Dominguez, did not have a magazine clip in it. (R. 603). Mr. Dominguez fired what he believed to be an unloaded gun; he did not know there was a single bullet left in the chamber.

34.    At the time the gun went off, Mr. Dominguez was not arguing with his wife. (R. 521). There was no evidence of a struggle. (R. 559). He had no reason to kill her. (R. 603). The bullet struck her at close range in the shoulder and then ricocheted, striking her heart. (R. 860). Mr. Dominguez called the police. (R. 488-89). Mr. Dominguez cooperated with the police; he was described by witnesses as hysterical and very scared. (R. 454-46, 489, 546-47, 567-68, 601, 644-45).

35.    Police recovered the gun from under the bed. (R. 556, 600). It was confirmed that the gun did not contain a magazine, (R. 603); the gun could be fired without the magazine in the weapon, (R. 727); with that type of gun, a bullet is automatically loaded into the chamber after it is shot, (R. 821); and if one bullet is left in the chamber, the gun can fire without the magazine. (R. 829).

36.    At the conclusion of the State's evidence at trial, the defense presented no evidence. The defense did not call a single witness.

37.    The Court inquired as to Mr. Dominguez' decision not to testify and he indicate he did not wish to do so.

38.    Defense counsel moved for a directed verdict and argued to the judge: ". . . What the evidence shows and all appearances is that he had an empty gun in his hand which, again, would lead to the decision that it was more accidental, unknown, unintentional, maybe reckless, any number of things, but certainly not intentional and certainly not know or what should have been in mind that he knew or should have know what he was going to do or what he did was likely to cause death or great bodily harm." (R. 930). The directed verdict motion was denied by the trial judge. (R. 932-33).

39.    During the conference on jury instructions, there was no mention whatsoever of a lesser included jury instruction. Mr. Dominguez was never asked on the record if he had made the decision not to include the jury instruction.

40.    The trial judge would later admit that he was shocked and he found it surprising and heartbreaking that the instruction was not tendered to the court. (R. 1411-12). Yet, the Court never issued *sua sponte* an instruction on involuntary manslaughter.

41.    In closing argument, defense counsel essentially argued that the facts as put forth by the State led to a finding of recklessness on the part of Mr. Dominguez and as such the jury should acquit him of first degree murder. Counsel argued:

> You hear it all the time.  You see it all the time.  We read about it all the time. It happens in accidents.  It happens when people are negligent.  It happens when people are reckless.  It happens when people are stupid.  It happens when people pick up weapons without determining whether or not the gun is loaded. (R. 966-67).
>
> * * *
>
> . . . That could very well be an accident, recklessness, negligence, stupidity, any number of different things; and unfortunately, people are killed all the time in this way.  It is terrible.  It is the biggest argument for handgun control that we hear.  But it doesn't make it murder.  It doesn't make it murder.  (R. 967).
>
> * * *
>
> I believe that the evidence indicates that Mr. Dominguez was responsible for the gun being discharged.  The question is under what circumstances did that occur?  (R. 968).
>
> * * *
>
> What else could have happened?  Accident, recklessness, negligence, stupidity, somebody taking out the gun in the house, not checking to see if the gun is loaded.  And the gun is an important piece of evidence, just as [the assistant state's attorney] indicated, but I believe that gun puts all the evidence into perspective with regards to accident, stupidity, certainly recklessness and negligence all wrapped into one.  (R. 980).

42.    Although recklessness was the hallmark of their defense, Mr. Dominguez' lawyers offered no lesser included instruction of involuntary manslaughter during the jury instruction conference.  This all-or-nothing-at-all approach was the unilateral decision of the trial counsel: "Thus it would have been **my ultimate decision**, I guess, not to [submit a lesser included instruction]. . ." (R. 1141).  Ramon Dominguez was never properly consulted about his decision on this extremely critical issue.

43.    Nor did the trial court *sua sponte* offer a lesser included jury instruction.  The trial judge did not question Ramon Dominguez about not giving a lesser included instruction.  After the trial, the judge expressed shock and surprise that a lesser included instruction for the offense of involuntary manslaughter was not given. (R. 1411-12).

44.    The instructions to the jury were based on two counts of first degree murder. Ramon Dominguez was convicted of first degree murder, intent to kill or do great bodily harm. (R. 1027).  He is currently serving a twenty-eight (28) year prison term.

**GROUNDS FOR RELIEF**

I.    **RAMON DOMINGUEZ MAKES THE REQUISITE SHOWING IN ORDER FOR THIS COURT TO GRANT THE PETITION FOR WRIT OF HABEAS CORPUS.**

45.    Petitioner incorporates paragraphs 1 through 44 by reference.

46.    28 U.S.C.A. § 2254(d) governs this application for a writ of habeas corpus.  The statute provides a mechanism for relief if the petitioner demonstrates the adjudication of the claim in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding.

47.    The state adjudications in Illinois of Mr. Dominguez' claims resulted in an unreasonable application of Federal law.  The Illinois courts in evaluating Mr. Dominguez' claims identified the correct governing legal principle from Supreme Court decisions but unreasonably applied the principles to the facts of his case.  Mr. Dominguez unquestionably meets the standard for ineffective assistance of counsel as put forth explicitly by the Supreme Court in *Strickland*.  In violation of *Strickland* and its progeny in the Circuit Courts[1], the state courts unreasonably denied relief.  Mr. Dominguez meets the threshold inquiry in granting this Writ.  28 U.S.C.A. § 2254(d)(1); *Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006) as amended, (May 19, 2006);

48.    State court decisions are to be granted deference in reviewing a petition for writ of habeas corpus.  Here, even in giving the state decisions the benefit of the doubt, the errors committed by counsel in the case of Mr. Dominguez were egregious, are documented throughout the record, and were in violation of Mr. Dominguez' rights under clearly established federal law.  Through clear and convincing evidence, Mr. Dominguez is able to overcome this highly deferential standard.  28 U.S.C.A. § 2254(d), *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847 (2005).

49.    In rejecting Mr. Dominguez' factually-supported assertions of ineffective assistance of trial counsel, the Illinois State courts were objectively unreasonable in denying him relief based on his claims.  *See Long v. Humphrey*, 184 F.3d 758, 761 (8th Cir. 1999).  The correct legal rule was presented in the Illinois State courts (*Strickland* standard) but the application of that rule to the facts of Mr. Dominguez' case was patently incorrect and unreasonable.  *See Gardner v. Johnson*, 247 F.3d 551, 557 (5th Cir. 2001), as corrected on rehearing, (May 1, 2001).

---

[1] The Supreme Court has found Circuit Court cases instructive in determining whether the state court's application of federal law was reasonable.  *See Price v. Vincent*, 538 U.S. 634, 643, 123 S.Ct. 1848 (2003).

50. The Supreme Court stated in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), that in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law." *Williams,* 529 U.S. at 386. The "unreasonableness" standard is thus used by federal courts to ensure that the decisions that mandate attention from the federal courts have a high enough facial inequity that they pass that threshold. This case meets that high standard. There can be no question that under the clearly announced rule in *Strickland* that Mr. Dominguez received ineffective assistance of counsel. To proclaim otherwise was an objectively unreasonable application of that federal law in this case.

51. 28 U.S.C.A. § 2254(e)(1) compels a habeas petitioner to rebut the presumption in favor of the state decision with clear and convincing evidence. The record in the case of Mr. Dominguez is replete with clear and convincing evidence that the trial counsel was ineffective. Moreover, it is replete with clear and convincing evidence that the Illinois state courts unreasonably denied his claim of ineffective assistance of counsel contrary to the clearly established federal law. *See also Walker v. Litscher*, 421 F.3d 549 (7th Cir. 2005).

52. Mr. Dominguez makes the requisite showing in this petition and asserts his claims herein. However, Mr. Dominguez prays that this Court will schedule the filing of legal briefs and memoranda in order to learn the full extent of the violations of federal law in the case of Mr. Dominguez.

II. **CLEARLY ESTABLISHED FEDERAL LAW GOVERNS THE ADJUDICATION OF RAMON DOMINGUEZ' CLAIMS. THE STATE COURTS UNREASONABLY APPLIED THAT LAW IN MR. DOMINGUEZ' CASE.**

A. **Clearly Established Federal Law Compels Reversal Of Mr. Dominguez' Conviction.**

53. Petitioner incorporates paragraphs 1-52 by reference.

54. The errors committed at trial by Mr. Dominguez' counsel were so egregious that they resulted in structural error, requiring reversal. When a defendant is deprived of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt, and the criminal punishment is seen as fundamentally unfair, this is structural error requiring reversal. *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S.Ct. 3101 (1986).

55. First, Mr. Dominguez was deprived of the basic protection afforded him under the Sixth Amendment of effective assistance of counsel. His trial counsel violated this right by not recommending a lesser included instruction. His counsel failed to utilize an interpreter to enable Mr. Dominguez to communicate with them and make intelligent and knowing decisions in his defense. Counsel failed to investigate Mr. Dominguez' mental fitness. Counsel did not investigate the murder weapon or put on *any* evidence in defense of Mr. Dominguez. Moreover,

10

the criminal punishment in this case is fundamentally unfair – Mr. Dominguez is serving a 28-year sentence for a crime that carries a sentence of 2-5 years.

56.    Mr. Dominguez' rights were further violated by the State's failure to disclose the fact that Mr. Dominguez was being medicated at the county jail with anti-psychotic and psychotropic drugs. This was a violation of Mr. Dominguez' rights under *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215 (1963).

57.    In *U.S. v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039 (1984), the Supreme Court found that a Sixth Amendment violation could be found where "based on the actual conduct of the trial, [ ] there was a breakdown in the adversarial process that would justify a presumption that the conviction was insufficiently reliable to satisfy the Constitution." *Cronic,* 466 U.S. at 662. In the case at bar, Mr. Dominguez' trial counsel engaged in conduct that resulted in a breakdown in the adversarial system. Mr. Dominguez was unable to participate in his own defense due to a language barrier, and counsel ignored pleas for help. Furthermore, the *Brady* violation caused Mr. Dominguez to be tried for murder while being medicated by an arm of the state without disclosure. Moreover, Mr. Dominguez was not necessarily fit for trial to begin with, but his lawyers never investigated his mental fitness. His conviction was the result of numerous violations, all calling into question the reliability of the jury's verdict. The trial judge was "shocked" at the defense not submitting a lesser included jury instruction and apparently believed that Mr. Dominguez may likely have been convicted of involuntary manslaughter if it had been tendered. Where the failure to tender such an instruction was due to egregious error by ineffective trial counsel, the constitution demands Mr. Dominguez be given a new – and fair – trial.

58.    Furthermore, it was during critical stages of the proceedings where Mr. Dominguez' rights were violated. A critical stage proceeding has been found where the "potential substantial prejudice to the defendant's rights inheres in the . . . ability of counsel to help avoid that prejudice." *See U.S. v. Wade,* 388 U.S. 218, 228, 87 S. Ct. 1926 (1967), *See also Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254 (1967).

59.    Defense counsel entirely failed to subject the trial to meaningful adversarial testing by: not communicating with Mr. Dominguez; not properly recommending the instruction that was appropriate for the elements proved by the prosecution; not allowing Mr. Dominguez to make a decision specifically reserved for him; not putting on any defense case; not investigating the murder weapon; and not investigating Mr. Dominguez' mental fitness.

60.    For example, this Court has held that at a sentencing hearing where counsel failed to test the evidence in aggravation and did nothing to offer evidence in mitigation (and in fact said nothing) counsel was ineffective at a critical stage. *See Patrasso v. Nelson,* 121 F.3d 297 (7th Cir. 1997). In the case at hand, Mr. Dominguez' counsel was ineffective at critical stages throughout his entire trial. Like in the aforementioned case in this Circuit, where Mr. Dominguez' trial counsel failed to call a single witness in defense (and present no evidence whatsoever in defense) and relied on an "accident" argument, leaving the jury with an all-or-nothing-at-all "Hobson's choice" after not obtaining Mr. Dominguez' knowing approval to do so, the jury never heard an involuntary manslaughter instruction. Likewise, trial counsel was

11

ineffective at a critical stage, where there was easy-to-discover evidence of Mr. Dominguez' mental instability, past problems, suicidal tendencies, and records of the administration of psychotropic and anti-psychotic drugs. Supreme Court law (through *Cronin*) and supporting Federal law (from this very Circuit) requires reversal.

61.     Mr. Dominguez' trial counsel failed him throughout his entire trial. Counsel did not investigate his mental health. Counsel never obtained a fitness hearing for Mr. Dominguez. By not securing the use of an interpreter to communicate with their client, Mr. Dominguez was left in the dark and was not permitted to make the decisions that were rightfully his to make. These errors transcend the different portions of the trial. Throughout the entire trial, Mr. Dominguez was denied his constitutional right to effective assistance of counsel.

62.     Egregious inaction by trial counsel (as is the case here) amounts to structural error. The errors here were fundamental errors that disturbed the framework of the trial and require reversal. Mr. Dominguez's rights were violated at every critical stage of the proceedings and his conviction must be reversed.

63.     The petitioner before this Court asserts that he makes the showing of structural error compelling this Court to grant the writ of habeas corpus and reverse his conviction. However, even if this Court were to find the errors here are not structural, there is certainly a showing of trial errors. Trial errors require a showing of prejudice, which Mr. Dominguez makes with clear and convincing evidence. The prejudice suffered mandates a new trial.

**B.     Under Clearly Established Federal Law (*Strickland v. Washington*), Ramon Dominguez Was Not Afforded His Constitutional Right To Effective Assistance Of Counsel At His Trial. At The Very Least, The Violations Resulted In Trial Errors. Mr. Dominguez Establishes With Clear And Convincing Evidence That The Trial Errors Were The Product Of Deficient Representation And That Deficient Representation Thus Prejudiced Him, Resulting In An Unreliable And Unreasonable Verdict.**

64.     Petitioner incorporates paragraphs 1 through 63 by reference.

65.     Mr. Dominguez received ineffective assistance of counsel in that:

- Mr. Dominguez' lack of comprehension of the English language compounded by the failure of his attorneys to provide interpretation of important legal concepts and to ensure Mr. Dominguez was informed to make the decisions reserved to him;
- His lack of understanding of the trial process and his options;
- The overwhelming questions of his mental fitness for trial that have long been ignored and the failure by his attorneys to investigate his background of mental instability and lack of fitness to be tried (made worse by the trial court's denial of a hearing to determine Mr. Dominguez' fitness);
- The fact that Mr. Dominguez was given anti-psychotic and psychotropic drugs without

the knowledge of his lawyers or the trial judge before and during the trial process; and
- The overall failure of his attorneys to present any evidence in defense of Mr. Dominguez and worse, that his lawyer's only argument to the jury was that the shooting and killing of his wife was a reckless act, an accident with a loaded pistol and **never** offered the lesser included instruction of involuntary manslaughter.

66.    The record in this case clearly establishes that Mr. Dominguez was denied the constitutional guarantee of effective representation at trial.  His counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

67.    First, Mr. Dominguez' representation at trial was deficient in many ways.  The errors made by trial counsel were so serious that counsel was not functioning as the counsel guaranteed to Mr. Dominguez by the Sixth Amendment.   Many of these deficiencies on their own rise to the level required under *Strickland* – but, their accumulation is egregious.  Counsel's representation was blatantly deficient.

68.    Second, the record makes clear that Mr. Dominguez' counsel's deficient performance prejudiced the defense. The errors deprived Mr. Dominguez of a fair trial, resulting in a verdict far from reliable.

69.    The result of Mr. Dominguez' deficient representation and consequential prejudice was a breakdown in the adversarial process, an unreliable outcome and a constitutionally infirm trial.  *Strickland*, 466 U.S. at 687.  The U.S. Supreme Court stated that representing a criminal defendant entails certain basic duties: "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and **the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution**. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. . ." *Strickland*, 466 U.S. at 688.

70.    There can be no question based on the record in this case that counsel violated this duty to Mr. Dominguez as it is articulated by the Supreme Court. Based upon the requirements imposed on defense counsel by the Supreme Court, Mr. Dominguez' counsel was not reasonable in their representation.  Considering all of the circumstances, counsel's assistance was objectively unreasonable. *Strickland* 466 U.S. at 688.

71.    The constitutional inquiry here remains: whether there is a reasonable probability that, absent the errors, the jury would have had a reasonable doubt respecting guilt. *Strickland*, 466 U.S. at 693. This inquiry compels Mr. Dominguez to demonstrate that the adverse affect or prejudice incurred to him by the ineffective representation creates a reasonable probability that but for counsel's errors the result of the proceeding would be different. Mr. Dominguez easily makes that showing. The facts in the record and the opinions of the state courts support Mr. Dominguez in this finding.

72.     This Court can reflect upon the record in this case, which firmly establishes that the elements as proved equated to a finding of involuntary manslaughter.  In fact, the Appellate Court stated:  the trial court was "sympathetic to defendant's position and indeed was heartbroken by the fact that, had the instruction been tendered, defendant may well have been convicted of involuntary manslaughter instead of first-degree murder.  We do not dispute that the failure of the all-or-nothing strategy was unfortunate for defendant." *Dominguez*, 366 Ill.App.3d at 475.  There can be no question as to the reasonable doubt of the guilty verdict for first degree murder.  Had trial counsel effectively represented Mr. Dominguez, the outcome would have been entirely different.

73.     Moreover, it has been held that the failure to investigate a client's mental competency at the time of the offense and during plea proceedings can render the attorney's representation ineffective. *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990).  The Fifth Circuit found that counsel's failure to determine his client's competency was made without any investigation and was not a reasonable trial tactic.  The court also found that counsel is the only person that could bring his client's competency to the court, and that failing to bring defendant's competency to the court meant that his mental condition was unlikely to be corrected in the future.  In the instant case, the problem was compounded by the attorneys' ineffectiveness at simply communicating with Mr. Dominguez – perhaps had they had an informed discussion with him with the use of a Spanish interpreter, they would have discovered his many mental ailments.  Instead, Mr. Dominguez went through the entire trial without ever having been evaluated, while being mediated by the county jail staff with anti-psychotic and psychotropic drugs.  Had post-trial counsel not effectively communicated with Mr. Dominguez and investigated his background, that information would still not be known today.  That equates to a showing of ineffectiveness on the part of trial counsel.

74.     Additionally, the failure of trial counsel to investigate the mental health of Mr. Dominguez at the beginning of the proceedings prejudiced him greatly.  By the time post-trial counsel discovered his potential unfitness for trial, the trial judge would not make a retrospective finding.  But for trial counsel's failures, Mr. Dominguez may have likely been found unfit for trial.  At the very least been, it he likely may have been afforded his right to a fitness hearing at the onset of the trial.

75.     The Illinois state courts also failed to find counsel ineffective in not investigating the alleged murder weapon.  Defense counsel put on **no** evidence at trial.  They relied upon the State's presentation of the facts and then never put on evidence to support the defense theory of "accident."  Aside from the ineffectiveness at not instructing the jury to the law counsel referred to in closing, counsel was grossly ineffective in not investigating evidence supportive of the theory of "accident."  Counsel argued in closing, "I believe that gun puts all the evidence into perspective with regards to accident. . ." (R. 980).  It was wholly unreasonable not to put on any evidence in support of this assertion.  Surely, a witness testifying for the defense that the gun could fire when appearing unloaded would have supported the defense theory and contradicted the State's assertion of intent.  This error by trial counsel cannot be discounted by strategy – it was deficient representation that resulted in prejudice to Mr. Dominguez.

14

76.    The failure to investigate physical evidence can render counsel's representation ineffective. *See Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992), where defense counsel was ineffective for failing to examine evidence and such investigation could have contradicted the state's theory and supported the defense. In the instant case – evidence about the gun that fired the shot would have bolstered the defense theory that Mr. Dominguez did not intentionally fire the gun. It would have contradicted the State's theory of first degree, intentional murder and supported the defense position of recklessness. It was deficient representation resulting in prejudice.

77.    It has been held that a defendant will be held to his decision on appeal or in a habeas petition *where the defendant consented to the presentation of a certain defense at trial. See Lobosco v. Thomas*, 928 F.2d 1054, 1056-57 (11th Cir. 1991), where the defendant consented to counsel conceding his guilt at trial but later he alleged that counsel should have raised an intoxication defense. The court found that asserting such a defense, in light of the *agreed tactic* of conceding guilt, was incompatible with the *agreed upon trial strategy*. Also, in *Weeks v. Jones*, 26 F.3d 1030 (11th Cir. 1994), the court found that where the defendant opposed counsel asserting a mental incapacity defense, counsel was not ineffective in failing to investigate and discover defendant's medical records relating to his mental illness and/or in failing to assert a defense of mental incapacity.

78.    It is clear from a reading of the record in this case that Mr. Dominguez did not consent to the all-or-nothing jury instruction. To this point, Mr. Dominguez' trial lawyer even testified that it was counsel's "**ultimate decision.**" (R. 1141). The state courts' findings to the contrary are unreasonable.

79.    During trial, Mr. Dominguez did not understand his lawyers. He reached out for help to Father Boehm at the jail. Counsel ignored the pleas for help. Mr. Dominguez' medication rendered him unable to testify. The fact he was being medicated was never disclosed to the defense. There are lingering questions of Mr. Dominguez' mental fitness. Mr. Dominguez' will was overborne by his trial counsel; he had no control over important decisions that were his to make. *Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58 (2nd Cir. 1996).

80.    Mr. Dominguez makes out the requisite showing under Strickland. His lawyers were deficient and objectively unreasonable in their representation of him and this deficient representation resulted in an unreliable and unjust guilty verdict for first degree murder. Federal law mandates a new trial to resolve these constitutional infirmities.

15

### C. There Was An Unreasonable Application Of Federal Law By The State Courts.

    i. Upon Review Of The Last Reasoned State Court Decision (And Previous Substantive Decision Going To The Merits), It Is Clear The Federal Law Was Unreasonably Applied To The Facts In This Case.

81.    Petitioner incorporates paragraphs 1-80 by reference.

82.    In determining the reasonableness of the application of federal law to Mr. Dominguez' case, this Court is to look at the last reasoned state court decision. *See Shackelford v. Hubbard*, 234 F.3d 1072 (9th Cir. 2000).

83.    In the instant case, the Illinois Appellate Court, Second District, was the last state court to issue a reasoned decision. *People v. Dominguez*, 366 Ill.App.3d 468, 851 N.E.2d 894 (June 27, 2006). In this opinion, the court was reevaluating Mr. Dominguez' claims on remand from an advisory order from the Illinois Supreme Court (*People v. Dominguez*, 216 Ill.2d 703, 834 N.E.2d 909 (Sept. 29, 2005)). After the State filed leave to appeal, the Illinois Supreme Court ordered the Illinois Appellate Court to reconsider its judgment in light of it's decision in *People v. Blair*, 215 Ill.2d 427, 831 N.E.2d 604 (2005). In *Blair*, the Illinois Supreme Court held that *res judicata* and forfeiture were valid bases for summary dismissal of a post-conviction petition. In reconsideration thereafter, the Illinois Appellate Court reversed its earlier decision (which had granted Mr. Dominguez' post-conviction petition) on *res judicata* grounds. In the same opinion, the court found that Mr. Dominguez failed to establish he was prejudiced by counsel's failure to investigate his mental health.

84.    Insofar as the Illinois Appellate Court based its decision on *res judicata* grounds and its previous recitation of the facts, it is appropriate to turn to this previous substantive opinion on the merits of Mr. Dominguez' claim. The Illinois Appellate Court discussed this issue and decided it on its merits in its March 10, 2005 opinion, the last reasoned opinion previous to the opinion based on *res judicata. Dominguez*, 356 Ill.App.3d 872.

85.    The Illinois Appellate Court found that it had determined on direct appeal that "a defendant, rather than his counsel, has the right to make the ultimate decision whether to tender an instruction on a lesser-included offense," and the court continued, " . . . because defendant's postconviction claim that counsel was ineffective for failing to tender or recommend the instruction is virtually identical to his specific claim on direct appeal that counsel was ineffective for failing to recommend the instruction, we deem the postconviction claim subject to *res judicata.*" *Dominguez* 366 Ill.App.3d at 474.

86.    The Appellate Court, in ruling on the post-conviction petition, stated: "Because the facts of this case have been set forth in great detail in [the direct appeal, *Dominguez,* 331 Ill.App.3d 1006 (2002)], they will not be set forth here." *Dominguez,* 356 Ill.App.3d at 873. This compels this Court to look to the facts established by the Appellate Court on direct appeal which serve as the foundation for the denial of the ineffective assistance claim.

87.    On direct appeal, the Illinois Appellate court recited, *inter alia,* the following pertinent facts:

- The State rested, and defendant presented no evidence. *Dominguez,* 331 Ill.App.3d at 1009.

- During the conference on jury instructions, neither of the parties nor the court addressed the propriety of an instruction on involuntary manslaughter. No such instruction was tendered to the court or given to the jury. *Id.* at 1009.

- Defense counsel in closing arguments acknowledged that Mr. Dominguez shot his wife, but stated that the act did not evince an intent to kill or do great bodily harm. Defense counsel used the words: "accident," "negligent," "reckless," "stupid" to describe the shooting. *Id.* at 1010.

- Mr. Dominguez obtained new trial for his post-trial motion and argued that his trial counsel did not allow him to decide whether to submit an instruction on involuntary manslaughter. *Id.*

- Mr. Dominguez argued post-trial that his trial counsel was ineffective for failing to submit the instruction. *Id.*

- Mr. Dominguez submitted an affidavit stating:
  - He was not fluent in English;.
  - He did not understand his option to instruct the jury on involuntary manslaughter;
  - Trial counsel presented the issue of the lesser-included instruction in a "really fast" discussion in the courtroom;
  - Trial counsel did not use an interpreter to explain the issue to Mr. Dominguez. *Id.*

- Trial counsel filed affidavits confirming that they explained the issue to Mr. Dominguez in the courtroom and did not use an interpreter. *Id.*

- An affidavit was submitted from Father Michael Boehm, a Spanish-speaking priest that had met weekly with Mr. Dominguez in the county jail. Father Boehm's affidavit stated:
  - Mr. Dominguez' English skills were "extremely limited to the point of being non-existent";
  - Mr. Dominguez did not understand what his lawyers told him;
  - Mr. Dominguez' trial counsel did not respond to Father Boehm's repeated attempts to contact counsel regarding Mr. Dominguez' concerns. *Id.*

- Father Boehm's testimony also included that: Mr. Dominguez asked what manslaughter was; Mr. Dominguez was very confused and frequently reiterated that he did not understand the proceedings; Mr. Dominguez was not able to speak sufficient English in a conversation that involved any type of detail. *Id. at 1011.*

- At hearings, the trial counselors stated that they did not use an interpreter for their meetings with Mr. Dominguez during the trial; they spoke English with Mr. Dominguez; Mr. Dominguez did not speak English as well as a native speaker and usually spoke in single syllables; they believed Mr. Dominguez understood them, but never asked Mr. Dominguez to explain anything in his own words; Mr. Dominguez would try and speak English with them, but "threw in some Spanish"; Mr. Dominguez was not fluent in English and spoke mostly in "yeses and nos." *Id. at 1010.*

17

- Trial counsel further testified that:
  - They had brief discussions about a lesser included offense instruction, in English and without an interpreter. Trial counsel admitted that while he believed Mr. Dominguez understood his plain words, he did not believe he understood the legal technicalities. *Id. at 1011.*
  - Attorney Melius testified: "Thus, it would have been **my ultimate decision**, I guess, not to [offer the instruction]. . ." *Id.* (emphasis added).

88.    The Appellate Court also detailed Mr. Dominguez' request for a fitness evaluation, noting that: Mr. Dominguez was taking psychotropic medication before, during and after his trial; a clinical psychologist testified that he had no doubt Mr. Dominguez was not fit to be sentenced; Mr. Dominguez had psychotic depression, was significantly medicated, was not in good contact with his surroundings, had "major depressive symptoms of psychotic proportion," had suicidal ideations, auditory hallucinations, and an inability to process information. *Id. at 1011-12.* A clinical psychologist for the State testified that Mr. Dominguez told him his medications prevented him from testifying in his defense at trial, but ultimately determined he felt Mr. Dominguez was fit. *Id. at 1012.* The trial court did not find a bona fide doubt as to Mr. Dominguez' fitness and denied the motion for a fitness hearing. *Id. at 1012.*

### ii. The State Court Decisions are an unreasonable application of clearly established federal law to the facts of Mr. Dominguez' case.

89.    Petitioner incorporates paragraphs 1-88 by reference.

90.    The Appellate Court's reasoning for denying Mr. Dominguez' claim of ineffective assistance of counsel was based on the fact that in Illinois, "a defendant, rather than his counsel, has the right to make the ultimate decision whether to tender an instruction on a lesser-included offense." *Id. at 1013* (citations omitted). The court noted further that "the defendant must make the decision knowingly and intelligently, though the trial court need not inquire whether the decision is so informed." *Id. at 1013* (citations omitted).

91.    Ultimately, despite all of the factual evidence to the contrary (which included the facts as summarized above), the Appellate Court upheld the trial court's determination that Mr. Dominguez made a knowing and intelligent decision to waive the introduction of the instruction. *Id. at* 1014.

92.    The Appellate Court also outlined the standard under *Strickland* for ineffective assistance of counsel – "(1) counsel's performance fell below an objective standard of reasonableness; and (2) it is reasonably probable that, but for counsel's deficient performance, the result of the proceedings would have been different." *Id. at 1014.* The court ultimately denied relief stating that "We acknowledge that an instruction on involuntary manslaughter would not have been inconsistent with defendant's theory. Nevertheless, counsel reasonably could have believed that the instruction would have converted a likely acquittal into a likely conviction of the lesser crime. The strategy may have failed, but so must defendant's claim that counsel was ineffective." *Id. at 1015.*

18

93.     In light of the facts summarized above, the Appellate Court was unreasonable in denying Mr. Dominguez' claim under *Strickland*.

94.     The Illinois Appellate Court stated:

> in dismissing his postconviction petition, the trial court stated that it was **sympathetic to defendant's position** and indeed was **heartbroken** by the fact that, had the instruction been tendered, defendant may well have been convicted of involuntary manslaughter instead of first-degree murder. We do not dispute that the failure of the all-or-nothing strategy was **unfortunate for defendant**. However, as noted on direct appeal, that misfortune does not mean that counsel was ineffective for pursuing that strategy. . .

*Dominguez*, 366 Ill.App.3d at 475 (emphasis added).

95.     This assertion by the state appellate court is revealing. First, the court incorrectly found that counsel was effective by determining it was a strategy decision, not in violation of *Strickland*. However, this is not a proper determination. It is not proper under federal law (especially in light of counsel's violation of its duty as articulated by the Supreme Court as well as the constitutional requirement of effectiveness). Nor is it proper under the state court's very own reasoning in deciding the merits of the same issue (where it found that the decision belonged to the defendant, not to counsel).

96.     It is inconsistent and unreasonable for the Appellate Court to state that counsel's strategy overcame an ineffective assistance claim yet at the same time find that there was no ineffective assistance of counsel because the defendant made the ultimate decision. The evidence clearly shows and counsel even admitted that the defendant did not make the ultimate decision. Based on the delineated right in Illinois law for the defendant to make the decision regarding lesser included instructions, trial counsel was ineffective here.

97.     This is simply not a question of strategy. This is a case where a criminal defendant – facing first degree murder charges – was not given the opportunity to properly communicate with his lawyers, was not given input on critical decisions, was not given his right under the law to make his own informed decision as to jury instructions, was found by one expert not to be fit for sentencing but was not afforded a fitness hearing, was not in control of the decision regarding lesser included instructions. Mr. Dominguez was not tried in a proceeding that tested the adversarial process.

98.     By clear and convincing evidence in this petition and throughout the record, Mr. Dominguez establishes ineffectiveness of trial counsel. That same evidence was before the state courts which unreasonably applied the law to the facts.

99.     Fundamental and inexcusable errors were committed by Mr. Dominguez' trial lawyers. Inappropriate application of the law to his case was conducted by the state courts. The

petitioner before this Court presents a valid claim of ineffective assistance of counsel. The state trial judge and the state appellate court felt "sympathetic" to Mr. Dominguez. However, the state court judges seemingly operated under the belief that the law was not behind them to do justice in this case. They were wrong. Justice *and* the law demand relief here. The clearly established federal law in this country mandates that Mr. Dominguez be given a new trial. Both justice and the law compel this Court to conduct a full review and order a new trial in order to correct the constitutional infirmities at the first trial.

## ADDITIONAL BACKGROUND INFORMATION

100.    There are no petitions or appeals presently pending in any state or federal court relating to the judgment under attack.

101.    Each of the grounds raised in this Petition were raised in Ramon Dominguez' state post-conviction petition proceedings.

102.    At the trial, Ramon Dominguez was represented by Michael Melius and Martin Shaffer.

103.    On appeal, Ramon Dominguez was represented by Stone & Associates, L.L.C., both with respect to Mr. Dominguez' direct appeal to the Illinois Appellate Court for the Second District and his petition for leave to appeal to the Illinois Supreme Court.

104.    Ramon Dominguez was represented by Stone & Associates, L.L.C. in state post-conviction proceedings and the subsequent litigation in the Illinois Appellate Court, Second District and the Illinois Supreme Court.

105.    Ramon Dominguez is not serving any sentence in connection with any other proceedings.

**WHEREFORE**, Petitioner, RAMON DOMINGUEZ, respectfully prays that this Honorable Court:

A.  Issue a writ of habeas corpus to have Petitioner brought before it to be discharged from his unconstitutional confinement and relieved from such confinement and from his unconstitutional conviction and sentence;

B.  Issue a writ of habeas corpus to have Petitioner brought before it to vacate the conviction and sentence;

C.  Conduct a hearing at which proof may be offered concerning the allegations of this Petition;

D.  Order the Respondents to file responsive pleadings;

E.  Schedule the filing of legal briefs and memoranda in support of the legal points raised herein so that the Court may be fully informed; and,

F.  Grant such other and further relief as may be appropriate and just.

Respectfully submitted,

_____

One of the attorneys for the Petitioner,
RAMON DOMINGUEZ

Jed Stone
John Curnyn
Stone & Associates
415 West Washington Street, Suite 107
Waukegan, Illinois 60085
(847) 336-7888
With Lauren Kaeseberg

21

## VERIFICATION AND CONSENT

I, Ramon Dominguez, declare under penalty of perjury and that all of the assertions made therein of my Petition for Habeas Corpus are complete, truthful and accurate.

_Ramon Dominguez_
Ramon Dominguez

Subscribe and sworn to
before me this _28_ day of
November, 2007.

_Chalene A. Whitley_
NOTARY PUBLIC

```
OFFICIAL SEAL
CHALENE A WHITLEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/03/09
```

22