IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KC **FILED**

JAN 24 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. RAMÓN DOMÍNGUEZ | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 07 C 7065 |
| DAN AUSTIN, Warden, Pinckneyville Correctional Center, | ) ) ) | The Honorable Virginia M. Kendall, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

The following Exhibits A through H to respondent's Motion to Dismiss, which was filed on January 24, 2008 in the above-captioned cause, are hereby filed with this Court:

Exhibit A:  *People v. Dominguez*, 773 N.E.2d 1167 (Ill.App. 2002);

Exhibit B:  Order denying PLA, *People v. Dominguez*, No. 94684 (Ill. 2002);

Exhibit C:  Postconviction petition, *People v. Dominguez*, No. 99 CF 1830, Circuit Court of Lake County;

Exhibit D:  Order dismissing postconviction petition, *People v. Dominguez*, No. 99 CF 1830;

Exhibit E:  *People v. Dominguez*, 824 N.E.2d 1232 (Ill.App. 2005);

Exhibit F:  Supervisory Order, *People v. Dominguez*, No. 100427 (Ill. 2005);

Exhibit G:  *People v. Dominguez*, 851 N.E.2d 894 (Ill.App. 2006);

Exhibit H:  Order denying PLA, *People v. Dominguez*, No. 103148 (Ill. 2006).

January 24, 2008                    Respectfully submitted,

                                    LISA MADIGAN
                                    Attorney General of Illinois

                        BY:    _Sheri Wong_
                                    SHERI L. WONG, Bar # (29)090
                                    Assistant Attorney General
                                    100 West Randolph Street, 12th Floor
                                    Chicago, Illinois 60601
                                    TELEPHONE: (312) 814-3692
                                    FAX: (312) 814-2253
                                    EMAIL:swong@atg.state.il.us

NOTICE
ext of this opinion may be changed
orrected prior to the time for filing of
ition for Rehearing or the disposition
e same.

No. 2--01--0366

FILED

JUN 2 8 2002

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT
RECEIVED

JUL 2 2002

Stone & Associates

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99--CF--1830 |
| RAMON DOMINGUEZ, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | James K. Booras, Judge, Presiding. **PUBL. IN FULL** |

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Ramon Dominguez, was convicted of first-degree murder (720 ILCS 5/9--1(a)(1), (a)(2) (West 1998)). He was sentenced to 28 years' imprisonment. He appeals, arguing that (1) his counsel and the trial court erred in failing to instruct the jury on the lesser-included offense of involuntary manslaughter (720 ILCS 5/9--3(a) (West 1998)); and (2) he was entitled to a hearing on his fitness to be tried and sentenced. We affirm.

I. FACTS

At trial, the State produced the following evidence. Dawn Ramirez testified that she was a 911 operator for the North Chicago police department. On May 28, 1999, about 10:30 p.m., a male called 911 and reported that his wife had been shot at his house. He stated that the shooter had run away. The caller lived at 1224 Park. According to Ramirez, the caller was "hysterical."

EXHIBIT A

No. 2--01--0366

Gerardo Reyes testified that defendant lived at 1224 Park with defendant's wife Martha Reyes and their children, G.D. and S.D.

S.D., defendant's six-year-old daughter, testified that she and her mother were in a bedroom when defendant walked in. S.D. saw defendant talk loudly to her mother, retrieve a gun from a closet, put it back, retrieve it again, and use it to kill her mother. Defendant then called the police.

Richard Wilson, a North Chicago police officer, testified that he was dispatched to 1224 Park. Defendant was standing on the porch. He was hysterical, and he said that his wife had been shot. He spoke English but with a Spanish accent. He led Wilson into the house, and Wilson saw a woman lying on the floor in a bedroom. In the same room, Wilson found a semiautomatic handgun under a bed.

Christopher Berg, another North Chicago police officer, was at the scene with Wilson. Berg testified that he and defendant spoke to each other in English and had no difficulty understanding each other. Defendant said that he and his children had been in the house and that his wife had been on the porch. Defendant stated that he heard a gunshot, ran outside, and saw someone running away. Defendant said that he dragged his wife into the house and went to retrieve his gun. Outside the house, Berg found no evidence of any kind. Inside the house, Berg saw no indication that anyone or anything had been dragged.

Robert D. Peters, a North Chicago firefighter/paramedic, was also dispatched to 1224 Park. He testified that he had smelled gunpowder in the bedroom.

-2-

William Jones, another North Chicago police officer at the scene, testified that the gun under the bed was lacking a magazine and thus appeared to be empty. There were no signs of a struggle inside the house.

Dean Kharasch, a North Chicago police officer, was at the scene as well. He testified that he asked defendant about the gun. Defendant said that the shooter had used the gun to shoot his wife in the living room. Defendant added that he fought with the shooter, who then threw the gun under the bed. Kharasch had no trouble understanding defendant's English. Kharasch's investigation confirmed that the shooting had occurred inside the house. In the bedroom closet, Kharasch found the magazine to the gun and a box of ammunition.

Brian Carder, a North Chicago police detective, testified that he found a shell casing on a dresser in the bedroom. No other casings were found in the house. No fingerprints were found on the gun. The gun could have been fired without a magazine if a bullet had been in the chamber.

The parties stipulated that Elizabeth Horvath, a physician, would testify that Martha Reyes died from a gunshot wound to the chest. Nancy Jones, a forensic pathologist, testified that Reyes was shot from no more than 18 inches away.

Robert Wilson, a firearms examiner for the Northern Illinois Police Crime Laboratory, testified that the shell casing on the dresser had been ejected from the gun found under the bed. He further stated that the same gun had fired the bullet recovered

-3-

No. 2--01--0366

from Martha Reyes's body.  That bullet matched the bullets found in the closet.

The State rested, and defendant presented no evidence.  In response to the court's inquiry, defendant stated that he did not wish to testify.  During the conference on jury instructions, neither the parties nor the court addressed the propriety of an instruction on involuntary manslaughter.  No such instruction was tendered to the court or given to the jury.

In his closing argument, defense attorney Michael Melius acknowledged that defendant had shot his wife.  Melius stated, however, that defendant's act did not evince an intent to kill or do great bodily harm.  Melius argued:

"We read about it all the time.  It happens in accidents. It happens when people are negligent.  It happens when people are reckless.  It happens when people are stupid.  It happens when people pick up weapons without determining whether or not the gun is loaded.

Is that intent to kill somebody then if you pick up that gun, and *** you believe that it's not loaded and then you pull the trigger and the gun goes off? ***

*** That could very well be an accident, recklessness, negligence, stupidity, any number of different things[.] *** But it doesn't make it murder."

The jury found defendant guilty of first-degree murder.

Represented by new counsel, defendant filed a posttrial motion, arguing that his trial counsel did not allow him to decide whether to submit an instruction on involuntary manslaughter.

-4-

No. 2--01--0366

Defendant further argued that counsel was ineffective for failing to submit the instruction.

In support, defendant filed various affidavits. In his own affidavit, defendant averred that he was not fluent in English and did not understand his option to instruct the jury on involuntary manslaughter. His trial counsel presented the issue in a "really fast" discussion in the courtroom and did not use an interpreter. In a separate affidavit, Melius confirmed that he and his trial partner, Martin Shaffer, explained the issue to defendant in the courtroom and did not use an interpreter.

In a third affidavit, Michael J. Boehm, a priest, averred that he was fluent in Spanish and met weekly with defendant. Defendant's English skills were "extremely limited to the point of being non-existent," and he did not understand what his lawyers told him. Melius did not respond to Boehm's repeated attempts to contact him.

At a hearing on the motion, Shaffer testified that he and defendant spoke to each other in English. Defendant did not speak English as well as a native speaker and usually spoke in single syllables. Nevertheless, Shaffer always believed that defendant could understand him. Shaffer never asked defendant to explain a legal concept in his own words.

Melius testified that he brought an interpreter to his initial meetings with defendant but not to later meetings. At the later meetings, Melius and defendant spoke English and "had no problem" communicating. Defendant occasionally "threw in some Spanish," but Melius then asked him to speak English, and defendant complied.

-5-

No. 2-01-0366

They discussed all legal concepts in English and without an interpreter. Defendant was not fluent in English and spoke mostly in "yeses and nos."

Melius further testified that he and defendant had three brief discussions about a lesser-included-offense instruction. Each discussion was in English and without an interpreter. Melius explained how the instruction could affect the case, how it could present a "compromise." Melius used plain English, and defendant understood his words, though not necessarily the legal technicalities. Melius made no recommendation, and defendant did not request an instruction. There was "kind of a consensus *** to go for all or nothing." The decision was made "with the defendant." Melius believed that the strategy was sound, but he would not have pursued it had defendant objected. Melius concluded:

"There was a discussion between myself, Mr. Shaffer and Mr. Dominguez about a lesser included offense. In our discussions, it was determined that we would not submit a lesser included offense [instruction]. Ultimately, if Mr. Dominguez would have said I want [an instruction], I would have submitted it. He did not say that. *** Thus it would have been my ultimate decision, I guess, not to do that because I didn't recommend it and he didn't say that he wanted it."

Boehm testified that defendant once asked him what manslaughter was. Defendant was very confused, and he frequently reiterated that he did not understand the proceedings. Boehm never

-6-

spoke to defendant in English, as defendant did not speak English fluently. Defendant could speak sufficient English to participate in a "normal" conversation, but not in one "that involved any type of detail." Defendant said that he was frustrated because his lawyers "didn't give him enough time," but he did not say that he could not understand them. Nevertheless, Boehm believed that defendant could not understand.

Joanne Arreguin, defendant's ex-wife, testified that by 1994 defendant could speak English sentences and string them together. He occasionally inserted some Spanish. He spoke English with his children but had more difficulty reading English. By May 1999, he mixed Spanish and English more frequently.

Before the court ruled on the posttrial motion, defendant moved for a fitness hearing. He argued that he was taking psychotropic medication before, during, and after his trial. The court proceeded to take evidence on that issue.

Defendant called Michael M. Gelbort, a clinical psychologist, who testified that he had evaluated defendant and had not "reached a clear-cut opinion as to fitness at the time of trial." However, Gelbort had "no doubt" that defendant was not fit to be sentenced. Defendant was suffering from psychotic depression and was taking significant psychotropic medications. He "was not really in very good contact with what was going on around him." He did not remember much of his trial. He was exhibiting "major depressive symptoms of psychotic proportion," including suicidal ideations, auditory hallucinations, considerable difficulty stringing thoughts together, and an inability to process information. Defendant's

-7-

No. 2--01--0366

language barrier contributed to the problem, though Gelbort and defendant spoke English to each other, and Gelbort was able to evaluate defendant without an interpreter. In English, defendant told Gelbort about his education and his children and further explained that he had shot his wife accidentally. Gelbort was able to understand those statements.

The State called John Dunne, also a clinical psychologist, who testified that he had evaluated defendant with an interpreter. Defendant was suffering from psychotic depression and possibly posttraumatic stress disorder. He stated that his medications affected his concentration and made him dizzy and sleepy. Nevertheless, he was very responsive to Dunne's questions.

Dunne testified that defendant identified two of the four medications he was taking. Defendant explained the charge of which he had been convicted and how his wife had died. He described the gun and stated that he had thought it was empty and had fired it accidentally. He remembered the names of his trial lawyers, his current lawyer, and the trial judge. He recalled the jury, the witnesses, and the evidence. He quoted S.D.'s testimony. He recalled that he did not testify and stated that his medications had prevented him from testifying. He stated that his lawyers had explained involuntary manslaughter. He knew that he was facing at least 20 years' imprisonment and would not be eligible for good-time credit. He was not distracted or hallucinating. His hallucinations occurred at night and would not affect him in court. His ability to understand or cooperate was not impaired. He did not exhibit significant memory loss or significant difficulty

-8-

No. 2--01--0366

thinking. Dunne concluded that defendant was fit to be sentenced. However, Dunne was unable to determine whether he was fit at the time of trial.

The court credited Dunne's testimony. The court further noted its own observations that defendant "function[ed] properly [and] appeared to be oriented." Thus, the court found no bona fide doubt of defendant's fitness at trial or for sentencing, and it denied the motion for a fitness hearing.

Returning to defendant's posttrial motion, the court stated that it was "surprising" that the defense offered no instruction on involuntary manslaughter. Nevertheless, the court determined that "the defendant was able to communicate with his attorneys." The court further found that the option to submit the instruction "was explained to the defendant, and the defendant opted not to exercise that right." The court concluded that defendant made the decision with adequate information and understanding. His posttrial motion was denied, he was sentenced, and he appealed.

## II. INVOLUNTARY MANSLAUGHTER INSTRUCTION

Defendant argues that, for three reasons, he is entitled to a new trial because the jury was not instructed on involuntary manslaughter. He asserts that (1) his trial attorneys denied him his right to decide whether to submit the instruction and that, even if he did decide, he was incapable of making a knowing and intelligent decision; (2) his trial attorneys were ineffective for failing to recommend the instruction; and (3) the trial court should have issued the instruction sua sponte.

-9-

No. 2--01--0366

## A. The Decision

A defendant, rather than his counsel, has the right to make the ultimate decision whether to tender an instruction on a lesser-included offense. People v. Brocksmith, 162 Ill. 2d 224, 229 (1994). The defendant must make the decision knowingly and intelligently, though the trial court need not inquire whether the decision is so informed. See People v. DePaolo, 317 Ill. App. 3d 301, 310-11 (2000). Here, whether defendant made the ultimate decision and whether he did so knowingly and intelligently were disputed questions of fact. Thus, we may reverse the trial court's determinations only if they are against the manifest weight of the evidence. See Brocksmith, 162 Ill. 2d at 229 (decision to tender lesser-included instruction analogous to decision to plead guilty); People v. Kelley, 44 Ill. 2d 315, 317 (1970) (determination whether guilty plea was involuntary rested on credibility of witnesses and thus was subject to reversal only if against the manifest weight of the evidence).

Defendant relies first on Melius's statement that "it would have been my ultimate decision, I guess, not to" instruct the jury on involuntary manslaughter. However, as is indicated by the phrase "I guess," Melius was not firm in that belief. Indeed, Melius testified that he, Shaffer, and defendant reached "kind of a consensus *** to go for all or nothing." That statement implies that the decision was as much defendant's as it was his attorneys'.

Furthermore, despite any doubt about who ultimately made the decision, there was no doubt that defendant ultimately had <u>control</u> over the decision, and that is what he was required to have. See

-10-

No. 2--01--0366

People v. Segoviano, 189 Ill. 2d 228, 240 (2000) (under Brocksmith,
the lesser-included-instruction decision is one "over which a
defendant ultimately must have control").    Melius testified
unequivocally that, had defendant requested an instruction, Melius
would have complied.    Thus, the evidence supported the trial
court's finding that defendant was given the authority to make the
decision and, with his attorneys, made the decision to forgo the
instruction.

Defendant responds that, because his attorneys discussed the
issue briefly and in English, he could not have made a knowing and
intelligent decision.    We first note that it is unclear how much
time was spent on the issue.    In his affidavit, defendant stated
that the issue arose in one "really fast" discussion.    At the
hearing, however, Melius testified that he and defendant had three
discussions, though each was brief.    In light of that conflict, the
trial court was entitled to credit Melius's testimony and find that
the three discussions, though brief, were collectively sufficient
to inform defendant's decision.

As for defendant's language ability, the evidence was wildly
divergent.    Boehm described defendant's English skills as virtually
"non-existent."    Nevertheless, the bulk of the evidence suggested
otherwise.    At trial, a 911 operator and several police officers
indicated that they were able to communicate substantively with
defendant in English.    After trial, Shaffer, Melius, and Gelbort
testified similarly.    Arreguin confirmed that defendant had been
able to express complex thoughts in English.    The trial court, too,
heard defendant speak, as when he told the court that he wished not

No. 2--01--0366

to testify at trial.  Thus, the court was clearly permitted to find
that defendant was able to communicate with his attorneys and that
his language skills did not prevent him from making a knowing and
intelligent decision.

### B.  Ineffective Assistance of Counsel

Next, defendant contends that his attorneys were ineffective
for failing to recommend that he submit an instruction on
involuntary manslaughter.  To establish that he received the
ineffective assistance of counsel, a defendant must show that (1)
counsel's performance fell below an objective standard of
reasonableness; and (2) it is reasonably probable that, but for
counsel's deficient performance, the result of the proceedings
would have been different.  Strickland v. Washington, 466 U.S. 668,
694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); People v.
Page, 193 Ill. 2d 120, 131-32 (2000).  The defendant must overcome
a strong presumption that counsel's actions were the product of
sound trial strategy.  People v. Gapski, 283 Ill. App. 3d 937, 942
(1996).  Indeed, strategic decisions are virtually unchallengeable
as long as the strategy was not so unsound that it failed to
subject the State's case to any meaningful adversarial testing.
People v. West, 187 Ill. 2d 418, 432-33 (1999).

In People v. McIntosh, 305 Ill. App. 3d 462 (1999), the
defendant was convicted of criminal sexual assault.  The
defendant's theory of the case was that his encounter with the
victim had been consensual.  On appeal, the defendant argued that
his trial counsel was ineffective for failing to instruct the jury

-12-

No. 2--01--0366

on the lesser-included offense of criminal sexual abuse. The appellate court disagreed:

> "[T]he decision of whether to submit an instruction on a lesser-included offense is typically considered to be one of trial strategy, which has no bearing on the competency of counsel. *** Defendant's attorney may have strategized that it was better for the jury not to have the choice of the lesser-included offense in the hope that they would be more inclined to acquit ***." McIntosh, 305 Ill. App. 3d at 471.

See also People v. Nunez, 319 Ill. App. 3d 652, 659 (2001) ("Defense counsel's decision not to pursue a lesser included offense was part of a cohesive trial strategy and did not constitute ineffective assistance").

Here, defendant's theory of the case was that he had shot his wife without a mental state required for murder. In support, the defense relied on the evidence that the gun had appeared to be empty. We acknowledge that an instruction on involuntary manslaughter would not have been inconsistent with defendant's theory. Nevertheless, counsel reasonably could have believed that the instruction would have converted a likely acquittal into a likely conviction of the lesser crime. The strategy may have failed, but so must defendant's claim that counsel was ineffective. See Gapski, 283 Ill. App. 3d at 942-43.

## C. Sua Sponte

Defendant's final argument on this issue is that, in failing to instruct the jury sua sponte on involuntary manslaughter, the trial court abused its discretion to do so. See People v. Garcia,

-13-

No. 2--01--0366

188 Ill. 2d 265, 282 (1999). However, neither in his posttrial motion nor at the hearing thereon did defendant challenge the court's exercise of its discretion on this point. Thus, this argument is waived. See People v. Enoch, 122 Ill. 2d 176, 186 (1988) ("failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal"). Furthermore, even if we wanted to evaluate the court's exercise of its discretion, defendant's failure to elicit the court's rationale prohibits us from doing so. Cf. Foutch v. O'Bryant, 99 Ill. 2d 389, 392 (1984) (without transcript of hearing on motion, "there is no basis for holding that the trial court abused discretion in denying the motion"). As a result, we decline to address this issue.

### III. FITNESS

On this point, defendant raises two arguments. He asserts that (1) the trial court erred in finding no bona fide doubt of his fitness; and (2) his trial attorneys were ineffective for failing to move for a fitness hearing before trial.

### A. Bona Fide Doubt

A defendant is presumed fit, and he will be deemed unfit only if he is unable to understand the nature and purpose of the proceedings or to assist in his defense. He is entitled to a fitness hearing only if there exists a bona fide doubt of his fitness. Relevant factors in determining the existence of a bona fide doubt include the defendant's irrational behavior, his demeanor at trial, and medical opinions. There are no fixed or

-14-

No. 2--01--0366

immutable signs that invariably indicate a <u>bona fide</u> doubt. Indeed, the question is often a difficult one that implicates a wide range of manifestations and subtle nuances. <u>People v. Easley</u>, 192 Ill. 2d 307, 318-19 (2000). We may reverse the trial court's resolution of the question only if the court abused its discretion. <u>People v. Contorno</u>, 322 Ill. App. 3d 177, 179 (2001).

As to whether defendant was fit for trial, neither psychologist offered a definitive opinion. As a result, no professional evaluation stood to contradict the court's own assessment of defendant's behavior and demeanor at trial. The court stated that it had seen nothing in defendant's conduct to indicate an inability to understand or participate in the proceedings. The record of the trial supports the court's finding; indeed, when defendant spoke, he spoke rationally, and the court never needed to address any inappropriate behavior. Thus, regardless of the general soundness of defendant's mind, the court did not abuse its discretion in finding that he had been fit for trial. See <u>Easley</u>, 192 Ill. 2d at 320 ("Fitness speaks only to a person's ability to function within the context of a trial. *** A defendant can be fit for trial although his or her mind may be otherwise unsound").

As to defendant's fitness for sentencing, Gelbort and Dunne offered totally opposite views. Each assessment was thorough and reasoned. However, the trial court chose to credit Dunne, whose assessment squared with its own observations. We have no basis to quarrel with its choice. See <u>People v. Eddmonds</u>, 143 Ill. 2d 501,

-15-

522-23 (1991) (no _bona fide_ doubt despite conflict in medical evidence).

Defendant asserts that "Dunne's data contradict[ed] his conclusions," but we disagree. Though Dunne noted defendant's mental illness, medications, and the side effects that defendant reported, the issue again was not defendant's condition in general but his ability to understand and participate in the proceedings. Dunne's conclusion was based on what he perceived to be defendant's near-mastery of the most intricate details of his trial, and that observation clearly supported Dunne's finding. See _Eddmonds_, 143 Ill. 2d at 520-21 (despite mental illness, no _bona fide_ doubt of fitness where defendant exhibited clear understanding of proceedings).

In sum, Dunne's testimony, along with the court's own observations, sufficed to allow the court to find no _bona fide_ doubt of defendant's fitness for sentencing. The court did not abuse its discretion.

B. Ineffective Assistance of Counsel

Finally, defendant asserts that his trial attorneys were ineffective for failing to move for a fitness hearing. That claim may succeed only if there exists a reasonable probability that, had defendant received a fitness hearing, he would have been found unfit to stand trial. _People v. Mitchell_, 189 Ill. 2d 312, 334 (2000). In attempting to show that probability, defendant relies on the same evidence that the trial court rejected as a basis for a _bona fide_ doubt. Defendant does not explain how, if that evidence was insufficient to raise a _bona fide_ doubt of his

-16-

No. 2--01--0366

fitness, it would have sufficed to prove that defendant was actually unfit. Thus, we conclude that defendant's trial attorneys were not ineffective.

### IV. CONCLUSION

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

O'MALLEY and BYRNE, JJ., concur.

94684

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

December 5, 2002


Hon. Jim Ryan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601


No.  94684 - People State of Illinois, respondent, v. Ramon
             Dominguez, petitioner.  Leave to appeal, Appellate
             Court, Second District.

    The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

    The mandate of this Court will issue to the Appellate Court

on December 27, 2002.

EXHIBIT B

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,           )
      Plaintiff-Respondent,           )
                         )
v.           )           No. 99 CF 1830
                         )
RAMON DOMINGUEZ,           )
      Defendant-Petitioner.           )

### PETITION FOR POST-CONVICTION RELIEF

NOW COMES the Defendant-Petitioner, RAMON DOMINGUEZ, by and through his attorneys, Stone & Associates, and requests relief pursuant to the Illinois Post Conviction Hearing Act and any other remedy which may be available under Illinois law to correct the wrongs as set forth below. In support of these requests, Petitioner states:

### I.    NATURE OF THE CASE.

1.      On June 16, 1999, Ramon Dominguez , was charged by indictment with first degree murder with the intent to kill or do great bodily harm to his wife.

2.      Ramon Dominguez was not arguing with his wife. He had no reason to kill her. Instead, he pointed a weapon at her and the gun went off. The gun had no magazine in it. It appeared unloaded. A single shot struck and killed Martha Reyes. Ramon Dominguez' firing of the gun was a reckless act.

3.      Ramon Dominguez is a Mexican national. His understanding the United States criminal justice system was nonexistent.

4.      Ramon Dominguez' English skills are poor. Ramon's native language is Spanish. Neither of his trial attorneys spoke to Ramon in Spanish.

EXHIBIT C

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

5.      At critical points in Ramon Dominguez' case, his lawyers failed to utilize the services of an interpreter.

6.      Ramon Dominguez was given anti-psychotic drugs by the Lake County Jail staff pre-trial and during his trial.  This medicating of the Defendant was unknown to Ramon's lawyers.

7.      No fitness hearing was held pre-trial by Ramon's lawyers.

8.      No psychological evaluations were conducted pre-trial by Ramon's lawyers.

9.      Under these conditions, Ramon Dominguez went to trial.

10.     A jury trial was held before the Honorable Judge James K. Booras of the Circuit Court of the Nineteenth Judicial Circuit, Lake County.  On April 13, 2000, the jury found Ramon Dominguez guilty of first degree murder.

11.     The trial court denied Mr. Dominguez' motion for a new trial Ramon Dominguez and was sentenced to twenty-eight (28) years in the Department of Corrections.

12.     On June 28, 2002, the Appellate Court for the Second District issued a published opinion in this matter.  On July 30, 2002, the Appellate Court denied Mr. Dominguez' Petition for Rehearing.  A Petition for Leave to Appeal was timely filed in the Illinois Supreme Court, and that Court declined to hear Mr. Dominguez' case on December 5, 2002.

13.     This Petition for Post-Conviction Relief is timely filed.

Page 2 of 10

II.     **RAMON DOMINGUEZ WAS DENIED EFFECTIVE ASSISTANCE OF
        COUNSEL BASED UPON COUNSELS' FAILURE TO OFFER THE LESSER
        INCLUDED INSTRUCTION OF INVOLUNTARY MANSLAUGHTER.
        ADDITIONALLY, COUNSELS RENDERED INEFFECTIVE ASSISTANCE OF
        COUNSEL WHEN THEY FAILED TO RECOMMEND TO RAMON
        DOMINGUEZ THAT A LESSER INCLUDE INSTRUCTION BE OFFERED TO
        THE JURY.**

14.     The theory of defense during the entire case was that what occurred on May 28,

1999, was a reckless act of pointing a loaded gun at Ramon's wife. Trial counsels tailored their

cross-examination of witnesses to establish that this was an act of recklessness. Trial counsel

established, with the cross examination of the State's firearm examiner, that the weapon had the

magazine removed and a stealth bullet in the chamber.

15.     Trial counsel's argument on directed verdict continued with the theory that it was

accidental, or at most reckless. He argued, ". . . What the evidence shows and all appearances is

that he had an empty gun in his hand which, again, would lead to the decision that it was more

accidental, unknown, unintentional, maybe reckless, any number of things, but certainly not

intentional and certainly not know or what should have been in mind that he knew or should have

know what he was going to do or what he did was likely to cause death or great bodily harm."

16.     In closing arguments, the trial counsel again argued that this was unknown,

unintentional, maybe reckless and accidental.

17.     When presenting such a theory of a case, an attorney providing reasonably

effective assistance would have requested a lesser included instruction be presented.

18.     Further, an attorney providing reasonably effective assistance would have

recommended to his client that a lesser included instruction be offered.

19.     It was unreasonable for counsel to tell the jury that he believed the evidence

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

indicated that Ramon was responsible for the gun being discharged that it was an act of recklessness and not give the jury the law of involuntary manslaughter.

20.     Had the lesser included instruction been offered, the outcome would have been different.

21.     The trial court thought there were facts that supported a lesser included instruction. The trial court believed, "A jury faced with a factual situation like the factual situation that we were presented and having a lesser included offense of involuntary manslaughter could have easily opted to find the defendant guilty of involuntary manslaughter and not murder." Again the trial judge said, "There was likelihood that the defendant could have been found not guilty of murder and guilty of involuntary manslaughter should the lesser included offense have been tendered."

22.     Ramon Dominguez's trial counsels provided constitutionally ineffective assistance because they failed to offer the lesser included instruction of involuntary manslaughter. Further, trial counsels were constitutionally ineffective in failing to recommend to the Defendant that the jury be so instructed.

23.     Trial counsels' conduct fell below the acceptable standard of reasonableness and, but for this substandard performance, there was a reasonable probability that the outcome of the trial would have been different.

III.    **RAMON DOMINGUEZ WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BASED UPON TRIAL COUNSELS' FAILURE TO HAVE THE GUN INDEPENDENTLY EXAMINED.**

24.     Trial counsels' argument to the jury was that the shooting was an "accident, recklessness, negligence."

Page 4 of 10

25.     On September 9, 1999, trial counsel requested of the court that the gun involved in this matter be examined by a defense expert. That request was granted.

26.     However, Ramon Dominguez trial counsels provided constitutionally ineffective assistance of counsel because they failed to have the gun tested.

27.     An attorney rendering reasonably effective assistance of counsel would have had the gun tested.

28.     Had counsel had the gun tested, counsel would have developed evidence to support trial counsels' theory that the shooting was accidental or reckless.

29.     That evidence would have justified a finding that Ramon Dominguez was not guilty of first degree murder and thus changing the outcome of Ramon's trial.

30.     The Petitioner will seek leave of this Court to have the gun removed from evidence and examined by an expert in order to support this issue.

## IV.     RAMON DOMINGUEZ WAS DENIED A FAIR TRIAL BASED ON THE TRIAL COURT'S FAILURE TO *SUA SPONTE* ISSUE A LESSER INCLUDED INSTRUCTION OF INVOLUNTARY MANSLAUGHTER.

31.     The trial court had within its discretion to instruct the jury, *sua sponte*, on a lesser included offense.

32.     When the trial court believed that a lesser included was warranted, the court should have, *sua sponte*, offered the lesser included instruction of involuntary manslaughter.

33.     The trial judge stated that he thought there were facts to support such an instruction. The trial judge stated twice that he was "surprised" when no involuntary instruction was offered. The trial judge also believed, "A jury faced with a factual situation like the factual situation that we were presented and having a lesser included offense of involuntary

Page 5 of 10

manslaughter could have easily opted to find the defendant guilty of involuntary manslaughter and not murder." Again, the trial judge said, "There was likelihood that the defendant could have been found not guilty of murder and guilty of involuntary manslaughter should the lesser included offense have been tendered."

34.    For the trial judge to sit idly by and not offer, *sua sponte*, the lesser included offense of involuntary manslaughter deprived Ramon Dominguez of due process of law and a fair and just trial.

35.    In the interest of justice and fairness, the trial judge should have *sua sponte* offered the involuntary instruction to ensure that the punishment Ramon Dominguez conformed more accurately to the crime actually committed.

## V.    RAMON DOMINGUEZ WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEYS DID NOT USE THE SERVICES OF AN INTERPRETER TO DISCUSS CRITICAL LEGAL ISSUES SO RAMON COULD MAKE A KNOWING AND INTELLIGENT DECISION ON A LESSER INCLUDED INSTRUCTION OF INVOLUNTARY MANSLAUGHTER.

36.    Ramon could not have made a knowing or intelligent decision regarding a lesser included instruction.

37.    Counsel did not consult with Ramon extensively about this difficult legal concept.

38.    Moreover, Ramon's first and primary language is Spanish.

39.    In their discussion with Ramon about the lesser included instruction, trial counsels for Ramon did not use an interpreter.

40.    At all times, the discussion about the lesser included instruction was in English.

41.    Ramon's English language proficiency was that of a child.

42.    Ramon Dominguez will supplement this Petition with a report from a language

Page 6 of 10

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

skills tester to establish the facts in support of this issue.

43.     An attorney providing reasonably effective assistance of counsel would have used an interpreter to discuss critical legal matters with his client.

44.     Further, Ramon Dominguez requested the use of an interpreter at trial to more fully understand what was occurring at the proceedings. This demonstrates that when it comes to complicated matters, Ramon Dominguez preferred an interpreter.

45.     When Ramon Dominguez requested the use of an interpreter, this should have given his trial attorneys a clue that the Defendant needed an interpreter to fully understand the issue of the lesser included instruction of involuntary manslaughter.

46.     To compound the ineffective assistance of counsel, Ramon Dominguez' attorneys had three "brief" conversations with the Defendant about a lesser included instruction.

47.     Had counsel utilized the services of an interpreter to discuss the lesser included instruction with the Defendant, the outcome of Petitioner's trial would have been different. Further, had counsels discussed thoroughly rather than briefly the options on a lesser included instruction, the outcome would have been different.

48.     Ramon Dominguez was prejudiced by trial counsels' failure to take the simple step of having an interpreter present when they fully explained the difficult legal subject of a lesser included instruction.

49.     Ramon Dominguez was prejudiced by trial counsels' failure to take the reasonable step of having a detailed conversation about the difficult legal subject of a lesser included instruction.

Page 7 of 10

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

**VI.    RAMON DOMINGUEZ RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEYS FAILED TO INVESTIGATE THEIR CLIENT'S MENTAL STATE PRE-TRIAL.**

50.    Ramon Dominguez was given anti-psychotic drugs by the Lake County Jail staff pre-trial and during his trial.

51.    An attorney rendering reasonably effective assistance of counsel facing first degree murder charges should be expected to investigate the mental status of his or her client.

52.    Upon learning of a psychological issue, trial counsel should obtain the records of medication being administered to his client before and during his trial.  Here, trial counsels did not.  Further, trial counsel should inform the court that the Defendant was suffers from a major mental illness.  Here, trial counsels did not.

53.    The records existed in Ramon Dominguez' case that he was being prescribed psychotropic medications at the jail.  Ramon Dominguez suffered from a major mental illness. Counsels did discovery this information.

54.    Had counsels discovered this information out about their client, they would have their client's ability to understand the nature and purpose of the proceedings or assist in his defense.

55.    The medication had an influenced the decision making abilities of the Petitioner.

56.    Had counsel conducted an investigation into his client's psychological state pre-trial the outcome of Petitioner's case would have been different.

57.    Evidence could have been presented that would have dissipated the jury's impression that Petitioner was cold and/or uncaring and influenced the jury to find Petitioner not guilty of first degree murder, thus changing the outcome of Petitioner's trial.

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

58.    If Ramon's attorneys had provided reasonably effective assistance of counsel, they would have had their client evaluated close in time to the crime which would have justified a finding of not guilty or a finding of guilt on a lesser charge.

59.    Further, had Ramon's attorneys provided reasonably effective assistance of counsel, they would have had the opportunity to conduct a fitness hearing pre-trial.

## VII.    THE STATE VIOLATED ITS OBLIGATION UNDER *BRADY V. MARYLAND* BY NOT DISCLOSING TO DEFENSE COUNSEL OR THE TRIAL COURT THE FACT THAT RAMON DOMINGUEZ WAS BEING MEDICATED.

60.    The medicating of the Petitioner was conducted by the staff at the Lake County Sheriff's Jail.

61.    It is undisputed that jails and the police have ongoing relationships with the State's Attorney.

62.    Therefore, the State violated its obligation under *Brady v. Maryland*, 373 U.S. 83(1963) when it failed to disclose to defense counsel and the Court the fact that Ramon Dominguez was receiving psychiatric care and placed on psychotropics by the Jail.

63.    This violation would command a new trial for Ramon Dominguez.

Page 9 of 10

## VIII. CONCLUSION.

RAMON DOMINGUEZ respectfully requests that his conviction be vacated and an evidentiary hearing on the issues presented for post-conviction relief under 725 ILCS 5/122-1 *et seq.*

Respectfully submitted,

*Ramon Dominguez*
RAMON DOMINGUEZ

SUBSCRIBED and SWORN to before me
this 5ᵗʰ day of June, 2003.

NOTARY

"OFFICIAL SEAL"
JOHN CURNYN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/16/2003

Page 10 of 10

## IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,                    )
    Plaintiff-Respondent,                              )
                                                       )
                                                       )    No. 99 CF 1830    F I L E D
v.                                                   )
                                                       )                      JUN 05 2003
RAMON DOMINGUEZ,                                     )
    Defendant-Petitioner.                              )

CIRCUIT CLERK

## PETITION FOR POST-CONVICTION RELIEF

Stone & Associates
415 West Washington Street, Suite 201
Waukegan, Illinois 60085
(847)336-7888

COUNSELS FOR PETITIONER

STATE OF ILLINOIS )
)    ss
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

People of the State of Illinois )
Plaintiff-Respondent )
)
v. )
)    99 CF 1830
Ramon Dominguez )    Judge James K. Booras
Defendant-Petitioner )

FILED
AUG 05 2003
CIRCUIT CLERK

**ORDER**

Defendant Ramon Dominguez, through his attorney Jed Stone, pursuant to the provisions of the
Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq. (West 1998), requests that this court
grant him a new trial. On June 16, 1999 the April 1999 Term Grand Jury defendant returned an
indictment against defendant charging him with first degree murder in violation of 720 ILCS 5/9-1(a)(1)
and first degree murder in violation of 720 ILCS 5/9-1(a)(2). A jury trial was held in April 2000 and
defendant was found guilty on both counts on April 13, 2000. Defendant was sentenced on March 26,
2001 to a term of 28 years in the Illinois Department of Corrections. Defendant filed a timely appeal.
His conviction was affirmed on June 28, 2002. Defendant filed a Petition for Rehearing which was
denied on July 30, 2002. Defendant's Petition for Leave to Appeal was denied on December 5, 2002.
Defendant has brought a petition for post-conviction relief (725 ILCS 5/122 et seq.), which was filed on
June 5, 2003.

As grounds for relief, defendant asserts that his trial counsel were ineffective because they
failed to offer a lesser-included offense jury instruction; his trial counsel were ineffective because they
failed to have the gun examined by an expert; that his trial counsel were ineffective because they failed

**EXHIBIT D**

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

to use an interpreter when working with defendant; that his trial counsel were ineffective because they failed to investigate defendant's pre-trial mental state; that the trial court committed error when it failed to sua sponte offer a lesser-included offense instruction, and that the State violated its duties under *Brady v. Maryland*, 373 U.S. 83 (1963) when it failed to disclose the fact that defendant was on medication during the trial.

## BACKGROUND

On June 16, 1999 the April 1999 Term Grand Jury defendant returned an indictment against defendant charging him with first degree murder in violation of 720 ILCS 5/9-1(a)(1) and first degree murder in violation of 720 ILCS 5/9-1(a)(2). A jury trial was held in April 2000 and defendant was found guilty on both counts on April 13, 2000. Defendant was sentenced on March 26, 2001 to a term of 28 years in the Illinois Department of Corrections. Defendant filed a timely appeal. His conviction was affirmed on June 28, 2002. Defendant filed a Petition for Rehearing which was denied on July 30, 2002. Defendant's Petition for Leave to Appeal was denied on December 5, 2002. Defendant has brought a petition for post-conviction relief (725 ILCS 5/122 et seq.), which was filed on June 5, 2003. It appears that defendant has made no petition for writ of certiorari to the United States Supreme Court. Defendant is currently serving his term of imprisonment.

## ANALYSIS

The instant proceeding was commenced on June 5, 2003 and is now before the court to assess the legal sufficiency of the petition, pursuant to Section 122-2.1 of the Post-Conviction Hearing Act. 725 ILCS 5122-2.1 (West 1996). *People v. Ramirez*, 162 Ill.2d 235,239,624 N.E.2d 1230,1244(1994). At this stage, the court must determine, without input from the State, whether the petition is frivolous or is patently without merit. *People v. Coleman*, 183 Ill.2d 366, 701 N.E.2d 1063, 1071(1998). In making this assessment, the court is encouraged to closely scrutinize the supporting documentation attached to the petition. *People v. Prier*, 245 Ill.App.3d 1037,1040, 613 N.E.2d

1226,1229 (4th Dist.1983); *People v. Lemons*, 242 Ill.App.3d 941,946, 613 N.E.2d 1234 (4th Dist.1993)

To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of a federal or state constitutional right in the proceedings that produced the judgment being challenged. *People v. Tenner*, 175 Ill.2d 372,378, 677 N.E.2d 859,862 (1997). A post-conviction proceeding is not a direct appeal, but rather a collateral attack on a judgment of conviction. *People v. Hawkins*, 181 Ill.2d 41,50, 690 N.E.2d 999,1003 (1998). The purpose of the proceedings is to consider constitutional issues which have not been, and could not have been, previously adjudicated. *People v. Brisbon*, 164 Ill.2d 236, 245, 647 N.E.2d 935,939 (1995). A defendant is not entitled to an evidentiary hearing under the Act as a matter of right. *People v. Hobley*, 182 Ill.2d 404,427-428, 696 N.E.2d 313,325-26 (1998). Rather, a hearing is required only if the defendant has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. *People v. Tenner*, 175 Ill.2d 372,378, 677 N.E.2d 859,862 (1997). Unsupported conclusory allegations in the petition or in the defendant's own affidavit are insufficient to require a hearing. *People v. Jackson*, 213 Ill.App.3d 806,811, 572 N.E.2d 475,479 (2nd Dist.1991). If the trial judge finds that the post-conviction petition raises frivolous claims that are patently without merit, the court may summarily dismiss the petition without a hearing. *People v. Maury*, 287 Ill.App.3d 77,80, 678 N.E.2d 30,32(1st Dist.1997). Moreover, a defendant is not entitled to the appointment of an attorney if he is indigent where a petition is summarily dismissed. 725 ILCS 5/122-4,122-5 (West 1998).

Defendant argues that his constitutional rights have been violated because he received ineffective assistance of counsel. When addressing a claim of ineffective assistance of counsel, Illinois courts adhere to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard a defendant must show that counsel's representation fell below an objective standard of reasonableness and that his performance was prejudicial to the defense. *People v. Albanese*, 104 Ill.2d 504, 473 N.E.2d 1246 (1984). Prejudice is defined as "a reasonable probability, that absent the errors,

3

the outcome would have been different." *People v. Gosier*, 165 Ill.2d 16, 649 N.E.2d 364 (1995). A defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an effective claim. *People v. Palmer*, 162 Ill.2d 465, 643 N.E.2d 797 (1994).

Neither mistakes in strategy nor the fact that another attorney, with the benefit of hindsight, would have proceeded differently is sufficient to establish ineffective assistance of counsel. *People v. Trotter*, 299 Ill.App.3d 535, 701 N.E.2d 272 (1st Dist.1998). Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *Strickland*, supra, 466 U.S. at 689 (A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.).

Defendant argues that trial counsel were ineffective because they failed to offer a jury instruction on the lesser-included offense of involuntary manslaughter. At trial the defense theory was that the shooting of defendant's wife by defendant was unintentional, accidental, stupid, and reckless. The evidence showed that when the weapon was used, the magazine had been removed and there had been a stealth bullet in the chamber.

The decision of whether to submit an instruction on a lesser-included offense is typically considered to be one of trial strategy, which has no bearing on the competency of counsel. *People v. McIntosh*, 305 Ill. App. 3d 462; 712 N.E.2d 893 (5th Dist.1999). Defendant's attorney may have strategized that it was better for the jury not to have the choice of the lesser-included offense in the hope that they would be more inclined to acquit defendant of all charges. An attorney's decision not to pursue a lesser included offense may be part of a cohesive trial strategy and would not constitute ineffective assistance. *People v. Nunez*, 319 Ill. App. 3d 652; 745 N.E.2d 639 (1st Dist.2001). Defendant's theory at trial was that although he had shot his wife, he lacked the mental state required for first degree murder. Defendant relied on State testimony that there was no magazine in the gun. The jury could have concluded that the gun appeared empty. The record shows that trial counsel made a decision with defendant "to go for all or nothing", instead of trying for a conviction on a lesser-

4

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

included offense. Trial counsel could have reasonably believed that a jury instruction on involuntary manslaughter would have downgraded a chance of complete acquittal on the murder charge into a probable conviction of involuntary manslaughter. Trial counsel's decision not to pursue the lesser included offense was part of a cohesive trial strategy and did not constitute ineffective assistance.

Defendant also faults trial counsel for failure to have the gun tested and examined by an expert. On September 9, 1999 trial counsel sought leave to have a defense expert examine the gun. The trial court agreed to allow an expert to test the gun, but trial counsel never did have the gun tested or examined by an expert witness.

In general, whether to call a particular witness is a matter of trial strategy. *People v. Flores*, 128 Ill.2d 66, 85-86, 538 N.E.2d 481,488 (1989). Nevertheless, failure to call a potential witness for the defense may indeed support an ineffectiveness claim. *People v. Barry*, 202 Ill.App.3d 212,216, 559 N.E.2d 919, 922 (1st Dist.1990). However, to sustain such a claim, a defendant must produce affidavits from those individuals who would have testified and also explain the significance of their testimony. *People v. Johnson*, 183 Ill.2d 176, 192, 700 N.E.2d 996,1004 (1998). Absent such affidavits, the court is unable to determine whether the potential witness could have provided any information or testimony favorable to defendant.

In the instant case, defendant has failed to submit affidavits from any potential witnesses and has failed to explain the significance of their testimony. It is quite possible that trial counsel spoke with potential experts who may have indicated that a gun without a magazine can always shoot any bullets which happen to be resting in one of the gun's chambers. There was no evidence in the record that the gun had malfunctioned in the past, or that this particular model gun was likely to malfunction. The record reveals that the defendant picked up the gun, pointed it, and pulled the trigger. Trial counsel may well have assumed that there was nothing an expert could have added to the evidence which would have helped defendant. In fact, the expert could have erased all doubt from the jury's mind and helped convict defendant. The unsupported conclusional allegations made in the petition to the effect that trial

5

counsel should have called an expert witness are insufficient to require a post-conviction hea ing under the Act. *People v. Pierce*, 48 Ill.2d 48, 268 N.E.2d 373 (1971); *People v. Jackson*, 213 Ill.App.3d 806, 572 N.E.2d 475 (2nd Dist.1991). Because defendant did not attach any affidavits, nor explain why none could be obtained, his claim fails on its merits. *People v. Collins*, 202 Ill.2d 59 (2002)(the post-conviction petition that defendant filed in this case complies with neither the letter nor the substance of section 122-1, as it lacks not only an explanation for the absence of supporting evidence but also even a single allegation from which such an explanation could reasonably be inferred.)

Defendant argues that trial counsel were ineffective because they failed to use an interpreter when discussing the lesser-included offense jury instruction issue with defendant. The record reflects conflicting evidence. At trial a number of witnesses testified that defendant was able to communicate substantively in English (several police officers, the 911 operator). After the trial there was also testimony from a number of witnesses that defendant was able to communicate in English (two trial attorneys, a psychologist, and defendant's ex-wife). In opposition, defendant and a priest named Boehm testified that defendant could not understand English. The court, after having had the opportunity to observe and speak with defendant, determined that defendant was able to effectively communicate with his attorneys. There was a sufficient basis for the court to find that defendant's language ability did not prevent him from making a knowing and intelligent decision not to pursue the lesser-included offense of involuntary manslaughter. The record refutes defendant's claim that he was deprived of a basic right, or was denied a fair trial thereby. There is no indication of record that defendant was either not personally understandable, comprehensible or intelligible or was forced to answer questions which he did not understand. *People v. Castro*, 109 Ill. App. 3d 561, 565; 440 N.E.2d 1008 (1st Dist.1982).

Defendant argues that trial counsel were ineffective because they failed to investigate their client's mental state and move for a fitness hearing pre-trial. Such a claim can only be effective if there is a reasonable probability that defendant would have been found unfit to stand trial if he had received a fitness hearing. *People v. Mitchell*, 189 Ill.2d 312,314, 727 N.E.2d 254 (2000). Defendant has not

6

shown any new evidence that defendant was unfit. Defendant relies on the same evidence that was before the trial court when it decided that there was no bona fide doubt about defendant's fitness. In any event, the petition seems to allege that trial counsel should have obtained records of medication being prescribed to the defendant. There is no evidence in the record that defendant informed trial counsel prior to or during the trial that he was being given medication. Trial counsel cannot be faulted for failure to request records of medication when the defendant does not inform counsel that he is being given medication. Competent counsel does not mean omniscient counsel. Apparently trial counsel was aware of the medication after trial and at that point moved for a fitness hearing.

Defendant next argues that the trial court committed error when it failed to sua sponte offer a lesser-included offense instruction on involuntary manslaughter. The general statement that a manslaughter instruction should be given where there is evidence justifying it must be understood in the sense the duty exists when such instruction is offered by either side, when the circumstances justify it, but does not apply to cases where no instructions for manslaughter are offered in the case. The failure to give an instruction for manslaughter where none was tendered is not error. *People v. Garcia*, 188 Ill.2d 265,273, 721 N.E.2d 574 (1999); *People v. Lappert*, 105 Ill. App. 3d 514, 517-18, 61 Ill. Dec. 84, 434 N.E.2d 21 (1982) (in prosecution for attempted murder, trial court was not required to give, *sua sponte*, an instruction on aggravated battery); *People v. Mullen*, 80 Ill. App. 3d 369, 376-77, 35 Ill. Dec. 573, 399 N.E.2d 639 (1980) (trial judge's failure to give *sua sponte* an instruction on the lesser-included offense of contributing to the sexual delinquency of a child was not a denial of defendant's right to a fair trial); *People v. Rosas*, 52 Ill. App. 3d 555, 558, 10 Ill. Dec. 377, 367 N.E.2d 986 (1977) (trial court did not err in failing to give *sua sponte* over defendant's objections any instructions on voluntary manslaughter); *People v. Hall*, 25 Ill. App. 3d 992, 1001, 324 N.E.2d 50 (1975)(It is well established in Illinois, however, that the trial court is under no duty to give instructions not requested by counsel); *People v. Mitchell*, 12 Ill. App. 3d 960, 964-65, 299 N.E.2d 472 (1973)(The established rule in this state has been that even if there is evidence justifying the

7

submission of a voluntary manslaughter instruction, the court is not bound to submit such on i s own motion.)

Defendant next argues that the State violated its duties under *Brady v. Maryland*, 373 U.S. 83 (1963) when it failed to disclose the fact that defendant was on medication during the trial. After trial, defendant moved for a fitness hearing, arguing that he had been on medication before, during, and after the trial. Defendant has completely failed to back up this argument. There is no affidavit or any evidence whatsoever in the record that defendant was unaware that he was being medicated. Nor is there any evidence that defendant could not remember being given the drugs. In fact, to the contrary, he was able to identify several of the medications to the psychologists who evaluated him, as well as describe in detail the reactions he was having from the drugs. Defendant explained to Dr. Dunne the side-effects of his medication, that they made him sleepy, dizzy, and prevented him from testifying. Simply put, there is no evidence that the State was secretly drugging defendant. Defendant knew that he was being given medication. There is no *Brady* violation.

## CONCLUSION

Based upon the foregoing discussion, the Court further finds that the issues raised and presented by the defendant are frivolous and patently without merit. Accordingly, the petition for post-conviction relief shall be and is hereby dismissed.

SO ORDERED

ENTER: _____
JUDGE JAMES K. BOORAS

Dated this 5th August 2003 at Waukegan, Illinois.

8

-COPY-LAKE COUNTY CIRCUIT CLERK-COPY-
-COPY-18 N. COUNTY WAUKEGAN IL-COPY-

**FILED**

MAR 1 0 2005

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

*NOTICE*
*The text of this opinion may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.*

Nos. 2--03--1016 & 2--03--1212 cons.

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

**PUBL. IN FULL**

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) ) | **RECEIVED** |
| | ) | |
| v. | ) ) | No. 99--CF--1830   MAR 1 1 2005 |
| RAMON J. DOMINGUEZ, | ) ) | Honorable   SAAP SECOND DISTRICT |
| | ) | James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Ramon J. Dominguez, was convicted of first-degree murder

(720 ILCS 5/9--1(a)(1), (a)(2) (West 1998)) and, following a fitness hearing, was sentenced to 28

years' imprisonment. This case currently is before this court on defendant's consolidated appeals from

the trial court's dismissal of his postconviction petition and from the denial of his motion to reconsider

that dismissal. Defendant argues that the trial court applied the wrong standard of review and

therefore erred when it dismissed defendant's postconviction petition during the first stage of the

proceedings. Although the trial court applied the correct standard, we reverse the trial court's

decision and remand this cause for second-stage proceedings, because we hold that the court reached

the wrong conclusion.

EXHIBIT E

Nos. 2--03--1016 & 2--03--1212 cons.

## I. FACTS

Because the facts of this case have been set forth in great detail in People v. Dominguez, 331 Ill. App. 3d 1006, 1008-13 (2002), this court's decision on defendant's direct appeal of his conviction and sentence, they will not be set forth here. What follows is this case's relevant procedural history.

After this court affirmed defendant's conviction and sentence (Dominguez, 331 Ill. App. 3d at 1017), defendant, with the assistance of retained counsel, filed a timely postconviction petition on June 5, 2003. Specifically, the petition claimed that defendant was denied effective assistance of counsel because his trial counsel (1) failed to tender to the trial court or recommend to defendant that the jury be offered a lesser included offense instruction of involuntary manslaughter; (2) failed to have the alleged murder weapon independently examined; (3) failed to use an interpreter when discussing with defendant the possibility of tendering the lesser included offense instruction; and (4) failed to investigate defendant's mental health. Additionally, the petition claimed that defendant was denied a fair trial because the trial court did not issue sua sponte the lesser included offense instruction, and that the State violated its obligation under Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by not disclosing that defendant was being medicated.

On August 5, 2003, the trial court, in a written order, summarily dismissed the petition as frivolous and patently without merit. Specifically, the trial court ruled that defendant's trial counsel was not ineffective because (1) the failure to tender the lesser included offense instruction was the result of an "all-or-nothing" trial strategy decided upon by defendant and his counsel; (2) the failure to have the gun independently examined was a matter of trial strategy, which was not called into doubt by the record or by the submission of affidavits from any potential witnesses or an explanation of the significance of their testimony; (3) the alleged failure to use an interpreter conflicted with the

-2-

Nos. 2--03--1016 & 2--03--1212 cons.

record and the trial court's own observations of and interaction with defendant, all of which demonstrated that defendant was able to communicate effectively with his attorneys; and (4) the failure to investigate defendant's mental health was not supported by any evidence not already considered by the trial court when it determined that there was no <u>bona fide</u> doubt about defendant's fitness to stand trial. Additionally, the trial court ruled that its failure to give the lesser included offense instruction <u>sua sponte</u> was not erroneous, because one was not tendered. Finally, the trial court ruled that defendant's claim that the State violated its obligation under <u>Brady v. Maryland</u> lacked merit because there was no evidence in the record, or affidavit stating, that defendant was unaware that he was being medicated or that he could not remember being given drugs. To the contrary, the court found, defendant identified the drugs he ingested and detailed their effects.

After the trial court dismissed defendant's postconviction petition, defendant, on August 27, 2003, filed a <u>pro se</u> notice of appeal from that dismissal. On September 4, 2003, defendant, with the assistance of counsel, moved to withdraw his <u>pro se</u> notice of appeal, filed a new notice of appeal (amended on September 17, 2003), and filed a motion to reconsider the dismissal of his postconviction petition. The motion to reconsider asserted that the trial court had applied the wrong standard and sought to incorporate into the postconviction petition those Department of Corrections medical records that would support defendant's fitness claim. Attached to the motion were affidavits from defendant's trial counsel, stating, <u>inter alia</u>, that an interpreter was not used to advise defendant of his right to a lesser included offense instruction, and from defendant's priest, stating concerns that defendant went to trial while unable to understand his lawyer, who ignored those concerns.

On October 1, 2003, after brief arguments, the trial court denied defendant's request for a hearing on his motion to reconsider. During the arguments, the trial court expressed serious doubt

Nos. 2--03--1016 & 2--03--1212 cons.

as to whether it could hear the motion to reconsider, because the cause remained within the 90-day period allowed for the trial court to review the petition without input from any party. On October 24, 2003, defendant filed a timely notice of appeal from the trial court's refusal to hear the motion.

## II. JURISDICTION

Before proceeding to the merits of this case, there are jurisdictional issues that must be resolved. An appellate court is under a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking. Ferguson v. Riverside Medical Center, 111 Ill. 2d 436, 440 (1985); Gilkey v. Scholl, 229 Ill. App. 3d 989, 992 (1992). Even if the issue is not raised by the parties, this court must determine the question of its jurisdiction (Carlson v. Powers, 225 Ill. App. 3d 410, 413 (1992)) prior to deciding the merits of an appeal (Steel City Bank v. Village of Orland Hills, 224 Ill. App. 3d 412, 416 (1991)). In this case, the primary issue is whether the trial court had jurisdiction over the motion to reconsider the dismissal of the postconviction petition.

This court lacks jurisdiction over, and cannot consider the parties' arguments on the merits of, an appeal taken from a trial court order when the trial court itself lacked jurisdiction to entertain the motion giving rise to the order being appealed. Village of Glenview v. Buschelman, 296 Ill. App. 3d 35, 42 (1998). In this case, the trial court expressed serious doubt as to whether it could hear the motion to reconsider because the cause remained within the 90-day period allowed for the trial court to review the petition without input from any party. The trial court, however, appears to have miscounted. Although the trial court has 90 days from the filing of a postconviction petition in which to review the petition without input from any party (725 ILCS 5/122--2.1(a) (West 2002)), that period had expired by the time defendant filed his motion to reconsider. Defendant's September 4, 2003, motion to reconsider was filed 91 days after defendant's June 5, 2003, postconviction petition.

Nos. 2--03--1016 & 2--03--1212 cons.

We note that generally there is no bar to a defendant filing a timely motion to reconsider the summary dismissal of a postconviction petition. The summary dismissal of a postconviction petition is a final judgment in a civil proceeding. 725 ILCS 5/122--2.1(a)(2) (West 2002); People v. Wilson, 37 Ill. 2d 617, 619-20 (1967). A party may, within 30 days of the entry of a final judgment in a civil case, move the court to reconsider that judgment. 735 ILCS 5/2--1203(a) (West 2002); see also In re J.D., 317 Ill. App. 3d 445, 448 (2000). Indeed, defendants have exercised that right. See, e.g., People v. Newbolds, 352 Ill. App. 3d 678, 679 (2004) (noting that the defendant filed a motion to reconsider the first-stage dismissal of the postconviction petition). Therefore, defendant's motion to reconsider, which was filed 30 days after the entry of the order dismissing the postconviction petition, was both timely and proper. Consequently, this court does have jurisdiction over defendant's appeal from the trial court's refusal to hear his motion to reconsider.

As a result of defendant's timely and proper motion to reconsider, however, the notice of appeal from the dismissal of defendant's postconviction petition, and the amended notice, are stricken. The final judgment dismissing a postconviction petition must be reviewed in accordance with the rules of the supreme court. 725 ILCS 5/122--7 (West 2002). According to the supreme court rules, an appeal from a final judgment is perfected only through the filing of a notice of appeal. 188 Ill. 2d R. 606(a); see also 134 Ill. 2d R. 651(a). Furthermore, although postconviction proceedings are civil proceedings (Wilson, 37 Ill. 2d at 619-20), appeals therefrom shall be in accordance with the rules governing criminal appeals (134 Ill. 2d R. 651(d)). Consequently, the effect of defendant's filing of his motion to reconsider the dismissal of his postconviction petition is that the notice of appeal from that same dismissal order, and the amendment of that notice, are premature and must be stricken. 188 Ill. 2d R. 606(b); cf. People v. Clark, 314 Ill. App. 3d 181 (2000). Because defendant did not file a

Nos. 2--03--1016 & 2--03--1212 cons.

new notice of appeal from that dismissal, this court lacks jurisdiction over the appeal therefrom. See People v. Miraglia, 323 Ill. App. 3d 199, 204, 206 (2001). Therefore, appeal No. 2--03--1016, the appeal from the August 5, 2003, dismissal of defendant's postconviction petition, is dismissed.

Nonetheless, in appeal No. 2--03--1212, this court may decide whether the trial court applied the wrong standard when it dismissed defendant's postconviction petition. Although the timely notice of appeal specifically assigns error solely in the October 1, 2003, refusal to hear defendant's motion to reconsider, the dismissal of the postconviction petition was a step within the procedural progression leading up to the refusal to hear the motion to reconsider. Hence, the dismissal order is reviewable. Burtell v. First Charter Service Corp., 76 Ill. 2d 427, 435-36 (1979); see also People v. Jones, 207 Ill. 2d 122, 138 (2003).

## III. THE PROPER STANDARD FOR SUMMARY DISMISSAL AT THE FIRST STAGE OF A POSTCONVICTION PROCEEDING

Although the trial court explicitly dismissed defendant's postconviction petition as frivolous and patently without merit, defendant contends that the trial court applied the wrong standard to the dismissal. In support of his contention, defendant argues that the trial court explicitly stated the standard applicable to second-stage review of a postconviction petition, while inexplicably omitting a statement of the standard applicable to first-stage review. Specifically, defendant notes that the trial court wrote: "To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of a federal or state constitutional right in the proceedings that produced the judgment being challenged"; and, defendant notes, the trial court failed to cite the "gist of a constitutional claim" standard.

-6-

Nos. 2--03--1016 & 2--03--1212 cons.

Defendant's contention fails. The trial court's statement of the "substantial deprivation" standard was nothing more than use of the "general terminology that is common in post-conviction proceedings." People v. Gaultney, 174 Ill. 2d 410, 422 (1996). The trial court clearly expressed: "At this stage, the court must determine, without input from the State, whether the petition is frivolous or is patently without merit." The court later stated that it could summarily dismiss only frivolous claims that are patently without merit, and then expressly did so. There is nothing that requires the trial court to expressly state the "gist" standard.

Nonetheless, defendant avers that he has set forth the gist of a constitutional claim, which he asserts is a low threshold where the allegations in the petition are taken as true and are construed liberally. In his motion to reconsider, defendant stated that the only issue that a court should address at the first stage is whether the gist of a constitutional claim has been presented, and he assigned error in the trial court's making findings of fact based on the record. We find that the standard presented by defendant limits the trial court's review of a postconviction petition to a degree that is not contemplated by the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 et seq. (West 2002)), because it restricts the court's review to the four corners of the petition.

At the first stage of a postconviction proceeding in a noncapital case, the trial court, within 90 days of the filing and docketing of a petition, shall review the petition and, in a written order that specifies findings of fact and conclusions of law, dismiss the petition if the court determines that the petition is frivolous or is patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2002). Because more often than not the defendant will be filing the petition pro se (see People v. Porter, 122 Ill. 2d 64, 70-75 (1988)), the defendant's burden at the first stage is lower than at stages later in the proceedings, when the defendant is assisted by counsel. The purpose is to give indigents a meaningful

Nos. 2--03--1016 & 2--03--1212 cons.

opportunity to be heard. See Porter, 122 Ill. 2d at 73. Consequently, the supreme court has declared

that the Act requires that a pro se petition present only the gist of a constitutional claim. People v.

Boclair, 202 Ill. 2d 89, 99 (2002). The "gist" standard is a "low threshold." Gaultney, 174 Ill. 2d at

418. Although a "gist" is something more than a bare allegation of a deprivation of a constitutional

right (People v. Prier, 245 Ill. App. 3d 1037, 1040 (1993)), it is something less than a completely pled

or fully stated claim (People v Edwards, 197 Ill. 2d 239, 245 (2001)). Therefore, to set forth the

"gist" of a constitutional claim, the pro se defendant " 'need only present a limited amount of detail.' "

Edwards, 197 Ill. 2d at 245, quoting Gaultney, 174 Ill. 2d at 418. The defendant need not construct

legal arguments or cite to legal authority (Porter, 122 Ill. 2d at 74); nor must the defendant plead

sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional

right (Edwards, 197 Ill. 2d at 244-45).        Notably, the "gist" standard was developed in cases

involving pro se postconviction petitions, with this premise in mind:

> " ' "While it is obvious that counsel should be better able to more artfully draft a petition than
>
> an indigent petitioner unschooled in legal drafting, it is certainly not clear that an indigent
>
> petitioner could not present the gist of his claim so that the trial court could make an initial
>
> determination as to whether *** the claim is frivolous." ' People v. Baugh (1985), 132 Ill.
>
> App. 3d 713, 717." Porter, 122 Ill. 2d at 74.

This case, however, does not involve a pro se petition, because defendant's petition and motion to

reconsider were filed by and through his attorneys. This circumstance raises the question of whether

a defendant assisted by counsel must state more than merely the gist of a constitutional claim. The

supreme court, in People v. Rogers, 197 Ill. 2d 216, 221 (2001), did not mention the "gist" standard

when the appeal involved a postconviction petition that had been filed with the assistance of counsel.

-8-

Instead, the court stated: "The petition must enunciate clearly 'the respects in which petitioner's constitutional rights were violated' and must include 'affidavits, records, or other evidence supporting its allegations' or an explanation why such evidence is not attached." Rogers, 197 Ill. 2d at 221, citing 725 ILCS 5/122--2 (West 1998). On the grounds that the record from the original trial proceedings contradicted the defendant's allegations of ineffective trial counsel and that no legal authority existed for the defendant's other allegations, the court affirmed the trial court's first-stage dismissal of the petition as patently without merit. Rogers, 197 Ill. 2d at 222-24.

Similarly, in People v. Paleologos, 345 Ill. App. 3d 700 (2003), the First District considered whether the record from the original trial proceedings contradicted the allegations in the defendant's petition that was filed with the assistance of counsel. The court found that the petition, which was dismissed at the first stage of the postconviction proceedings, contained allegations that were not rebutted by the record. Paleologos, 345 Ill. App. 3d at 706. Initially, the court did not mention the "gist" standard, stating: "Based on the first-stage procedural posture of the instant case, the relevant question is, first, whether the petition alleges a constitutional deprivation, and, second, whether the petition was substantively rebutted by the record, rendering it frivolous or patently without merit." Paleologos, 345 Ill. App. 3d at 704. The court later reiterated this inquiry, stating: "consistent with the terms of the Act and the purpose of the first stage, we address whether the petition alleges a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit." Paleologos, 345 Ill. App. 3d at 704-05. Ultimately, however, the court acknowledged the "gist" standard, stating: "If any one allegation states the gist of a constitutional deprivation, the entire petition should be docketed for second-stage review pursuant to sections 122-4 through 122-6 of the Act." Paleologos, 345 Ill. App. 3d at 706.

Nos. 2--03--1016 & 2--03--1212 cons.

Despite the failure of the supreme court in <u>Rogers</u> to apply the "gist" standard, there is no

reason to hold petitions filed with the assistance of counsel to a higher standard than those filed <u>pro</u>

<u>se</u>. Although courts generally construe the allegations made in a <u>pro se</u> filing more liberally than the

allegations made in a filing prepared with the assistance of counsel, the requisite contents of the filing

do not change. <u>Turner-El v. West</u>, 349 Ill. App. 3d 475, 479 (2004). Thus, regardless whether a

postconviction petition is filed <u>pro se</u> or with the assistance of counsel, the petition must, at a

minimum, state the gist of a constitutional claim. The problem in this case, however, is that defendant

proposes that the only inquiry the court may make is whether the gist of a constitutional claim has

been stated, without inquiry into the record. Such a proposition is contrary to the purpose of section

122--2.1(a)(2) of the Act.

The purpose of section 122--2.1(a)(2) of the Act is to permit trial courts to dismiss petitions

that are frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2002). To make this

determination, the trial court "may examine the court file of the proceeding in which the petitioner

was convicted, any action taken by an appellate court in such proceeding and any transcripts of such

proceeding." 725 ILCS 5/122--2.1(c) (West 2002); <u>Porter</u>, 122 Ill. 2d at 76. Thus, the trial court's

review of the petition is limited to the contents of the petition and the records of the relevant

proceedings. The trial court may not accept input from either the defendant or the State (<u>Gaultney</u>,

174 Ill. 2d at 420) and may not engage in any review of matters beyond the allegations of the petition

(<u>Boclair</u>, 202 Ill. 2d at 99).

Under the "gist" standard, the supreme court has placed other limitations upon the trial court.

Defendant, however, mistakenly relies upon them. First, in his motion to reconsider, defendant relies

upon <u>People v. Boclair</u>, 202 Ill. 2d at 99, for the proposition that the trial court may not make

-10-

Nos. 2--03--1016 & 2--03--1212 cons.

findings of fact. Citing People v. Coleman, 183 Ill. 2d 366 (1998), Boclair states: "The court is further foreclosed from engaging in any fact finding or any review of matters beyond the allegations of the petition." Boclair, 202 Ill. 2d at 99. Understood as defendant would prefer, this statement would be contrary to the mandate of section 122--2.1(a)(2) of the Act, which requires the trial court to specify its findings of fact. When understood within the context of Coleman, however, its meaning is clear. The supreme court in Coleman, 183 Ill. 2d at 380-81, while discussing the restrictions on a trial court that conducts a dismissal hearing during the second stage of postconviction proceedings, stated: "[O]ur past holdings have foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding." Thus, it is clear that, during the first stage, the trial court may not engage in fact-finding (such as hearing witnesses), but that foreclosure does not prevent the trial court at the first stage from making findings of fact based only on the petition and the records of the relevant proceedings. In fact, the supreme court already has rejected the contention that the trial court's review is limited to review of the petition alone. Porter, 122 Ill. 2d at 75-76.

Second, defendant relies upon People v. Edwards, 197 Ill. 2d at 244, for the proposition that the trial court must take as true the allegations in the petition. Edwards states: "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " Edwards, 197 Ill. 2d at 244, quoting Gaultney, 174 Ill. 2d at 418. Taken literally, this statement would nullify section 122--2.1(c) of the Act, which permits the trial court at the first stage to examine the records of the relevant proceedings. We believe that the supreme court did not intend for its statement to have such an effect. In fact, the supreme court itself examined the record in Edwards. The court stated:

-11-

Nos. 2--03--1016 & 2--03--1212 cons.

"Defendant in the case at bar alleges that he repeatedly asked his attorney to file an appeal but

that she had 'taken it or decided for herself not to file' one. For purposes of deciding whether

defendant's petition is frivolous, we must take these allegations as true. [Citation.] There is

nothing of record which indicates that defendant's counsel reviewed the plea proceedings for

error or consulted with defendant regarding grounds for an appeal before deciding not to file

the motion to withdraw the guilty plea." Edwards, 197 Ill. 2d at 253-54.

Presumably, the result in Edwards would have been different if the record had the opposite indication.

Therefore, the supreme court must have intended that only those allegations that are not rebutted by

the record should be liberally construed and taken as true. Such an understanding is consistent with

the Act and the supreme court's rulings, as it would be unreasonable and inefficient if a defendant's

misrepresentation of the facts could permit a petition to proceed to the second stage when the

defendant's rendition of the facts is rebutted by the record, thereby rendering the petition frivolous

or patently without merit.

The vague and general terms sometimes used in the supreme court's rulings and the cases

interpreting them have caused confusion regarding the proper construction of the standard for first-

stage review of a postconviction petition. Indeed, this court has constructed the standard in many

different ways. See, e.g., People v. Rivera, 342 Ill. App. 3d 547, 549 (2003) ("[A] petition need only

state the 'gist' of a constitutional claim"); People v. Stivers, 338 Ill. App. 3d 262, 263-64 (2003) ("The

court, without input from the State, must assess in the summary review stage whether the petition's

allegations, liberally construed and taken as true, set forth a constitutional claim for relief"); People

v. Crane, 333 Ill. App. 3d 768, 773 (2002) ("At the preliminary stage, a petition need present only

-12-

the gist of a substantial claim that the defendant's constitutional rights were violated"). Consequently, this court is in need of a more succinct and accurate statement of the standard.

In constructing a more succinct and accurate standard, we note that a petition may state the "gist" of a constitutional claim, but that claim is not necessarily nonfrivolous or meritorious. See, e.g., People v. Shevock, 353 Ill. App. 3d 361, 365 (2004), quoting Edwards, 197 Ill. 2d at 257 (finding that the defendant's petition had stated the "gist" of a claim by alleging at least one factual element, but affirming summary dismissal on the grounds that the petition was " 'so completely lacking in substance that it [was] frivolous [and] patently without merit' " and "so thoroughly sanitized of facts that there [were] none to take as true"). Although defendant properly stated that "the question is, 'Did the Petitioner state the gist of a constitutional claim in his post-conviction petition?' " that question is merely the first one. The second question is whether the allegations in the petition are rebutted by the record. Hence, the statement of a "gist" of a constitutional claim may be sufficient to survive summary dismissal at the first stage of a postconviction proceeding, but the claim does not necessarily survive that fate once the record is taken into consideration. After all, the ultimate question is not merely whether the "gist" of a constitutional claim has been stated, but rather whether that claim is frivolous or patently without merit. Therefore, this court finds that, modified slightly, the First District's construction of the standard applicable to the review of a petition at the first stage of postconviction proceedings is workable for both pro se defendants and defendants represented by counsel, and is consistent with the Act and the principles and restraints espoused by the supreme court: whether, after the court takes as true and liberally construes all the allegations not rebutted by the record, the petition states the gist of a constitutional claim, thereby rendering the petition neither frivolous nor patently without merit. See Paleologos, 345 Ill. App. 3d at 704-05; see

-13-

Nos. 2--03--1016 & 2--03--1212 cons.

also People v. Deloney, 341 Ill. App. 3d 621, 627 (2003) (emphasis omitted) ("[I]n order to

withstand summary dismissal, defendant's petition must contain a 'simple statement which presents

the gist of a claim for relief which is meritorious when considered in view of the record of the trial

court proceedings' "), quoting People v. Dredge, 148 Ill. App. 3d 911, 913 (1986).

## IV.  REVIEW OF DEFENDANT'S CLAIMS

Keeping in mind this construction of the standard for summary dismissal of a petition at the

first stage of postconviction proceedings, this court must review defendant's claims. We review de

novo the summary dismissal of a postconviction petition. Coleman, 183 Ill. 2d at 389.  If any one

claim states the gist of a constitutional deprivation, the entire petition should be docketed for

proceedings pursuant to sections 122--4 through 122--6 of the Act. People v. Rivera, 198 Ill. 2d 364,

370-71 (2002).

In this case, at least one of defendant's claims states the gist of a constitutional deprivation.

Defendant claims that he received ineffective assistance of counsel when his trial attorney failed to

tender the lesser included offense instruction of involuntary manslaughter.  Defendant's allegations

in support of this claim are not rebutted by the record for the purposes of first-stage review under the

Act.

To establish a claim of ineffective assistance of counsel, a defendant must show (1) that

counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's

deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694, 80 L. Ed. 2d

674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); see also People v. Chandler, 129 Ill. 2d 233, 242

(1989). The question, therefore, is whether defendant's trial counsel's allegedly deficient performance

"so undermined the proper functioning of the adversarial process that the trial cannot be relied on as

Nos. 2--03--1016 & 2--03--1212 cons.

having produced a just result." <u>Strickland</u>, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064. More specifically, however, the question in this case is whether defendant stated the claim with allegations that are not rebutted by the record.

In this case, defendant alleges that his trial counsel's theory of defense was that defendant's act of killing his wife by pointing a loaded gun at her was accidental, or at most reckless, but not intentional or knowing. Given such a theory, defendant alleges, effective counsel would have either recommended or tendered a lesser included offense instruction of involuntary manslaughter, and the failure to have done so fell below the objective standard of reasonableness, the result of which prejudiced defendant.

The record in this case does not rebut defendant's allegation that his trial counsel presented a theory of recklessness; nor does the record rebut defendant's allegation that his trial counsel failed to tender the lesser included offense instruction. The issue here is whether defendant's counsel recommended to defendant that a lesser included offense instruction be offered. If such a recommendation occurred, then defendant's claim fails.

An all-or-nothing strategy is not a viable strategy, except when a defendant consents to it. <u>People v. Lemke</u>, 349 Ill. App. 3d 391, 401 (2004). A defendant's consent to an all-or-nothing strategy invokes the doctrine of invited error. Under the doctrine of invited error, a defendant may not request that counsel proceed in one manner at trial and then later contend on appeal that trial counsel acted in error. <u>People v. Villarreal</u>, 198 Ill. 2d 209, 227-28 (2001). In this case, if defendant's counsel recommended to defendant that an involuntary manslaughter instruction be offered, and defendant refused that recommendation, then defendant invited the error that occurred at trial by virtue of not making the involuntary manslaughter instruction available to the jury.

Nos. 2--03--1016 & 2--03--1212 cons.

However, the record supports defendant's allegation. At defendant's fitness hearing, defendant's counsel stated: "I don't ever recall making any recommendation with regards to a lesser included instruction." Additionally, regarding who made the ultimate decision whether to include the involuntary manslaughter instruction, defendant's counsel stated: "[I]t would have been my ultimate decision, I guess, not to do that because I didn't recommend it and he didn't say that he wanted it." Consequently, the record does not rebut defendant's allegation. As trial counsel allegedly pursued an all-or-nothing strategy without defendant's consent, and as there is a reasonable probability that a different strategy would have produced a different result, defendant has stated the gist of a constitutional claim.

We note that this conclusion creates tension with this court's decision on defendant's direct appeal, in which this court affirmed the trial court's denial of defendant's posttrial motion that raised the same claim. Dominguez, 331 Ill. App. 3d at 1013-15. This tension is a result of this court's refusal to allow summary dismissal of a postconviction petition on the ground of res judicata[1] (People v. Murray, 351 Ill. App. 3d 219, 221 (2004)), even though this court's actions in this case may be examined at this stage (725 ILCS 5/122--2.1(c) (West 2002)). Even upon examination of this court's decision on defendant's direct appeal, this tension remains because of the different standards applicable at the different stages of this case. To defendant's direct appeal, this court applied the

---

[1]This statement is not meant to express this court's opinion as to the merits of a res judicata analysis of this case. Rather, we make this statement solely for the purpose of acknowledging that, one way or the other, a res judicata analysis of this case may resolve the tension that exists between our decision here and our decision on defendant's direct appeal. That analysis, however, is reserved for proceedings during the second stage.

Nos. 2--03--1016 & 2--03--1212 cons.

manifest-weight-of-the evidence standard, through which this court gave deference to the trial court's determinations. Here, the standard is de novo, so the trial court receives no deference, and the "gist" standard is low, so defendant receives much deference. As a result, many of the trial court's credibility and factual determinations that this court used to affirm the trial court on direct appeal are inappropriate at this stage. For example, the trial court's determinations about defendant's language ability may not be considered, because neither this court nor the trial court may make such determinations at this stage. See People v. Broughton, 344 Ill. App. 3d 232, 236 (2003).

Defendant's language ability is critical to a determination in this case because a legally valid decision to forgo a lesser included offense instruction must be made knowingly and intelligently by a defendant, who ultimately has control over the decision. See People v. Segoviano, 189 Ill. 2d 228, 240 (2000); People v. Brocksmith, 162 Ill. 2d 224, 229 (1994); People v. DePaolo, 317 Ill. App. 3d 301, 310-11 (2000). Here, the extent to which defendant can understand English has been, and remains, a disputed question of fact. Defendant, of course, alleges that he does not understand English well enough to have understood the concept of involuntary manslaughter. In general, however, a defendant's allegations must be supported by "affidavits, records, or other evidence" attached to the petition (725 ILCS 5/122--2 (West 2002)), and, pursuant to the embattled holding of People v. Collins, 202 Ill. 2d 59, 66 (2002), failure either to attach such evidence or to explain its absence justifies summary dismissal. In this case, defendant failed to attach the requisite evidence to his petition. His motion to reconsider, however, contains affidavits that lend support to his claim. A motion to reconsider invokes the sound discretion of the trial court. Williams v. Covenant Medical Center, 316 Ill. App. 3d 682, 693 (2000). However, the trial court in this case failed to exercise any discretion over defendant's motion to reconsider because of its mistaken conclusion that the motion

-17-

Nos. 2--03--1016 & 2--03--1212 cons.

was premature. Consequently, there is error. See <u>Avery v. Garbutt</u>, 19 Ill. App. 3d 1001, 1003-04

(1974) ("there is error when a trial court refuses to exercise discretion in the erroneous belief that it

had no discretion as to the question presented"). Under the circumstances, this court may accept the

affidavits, and we do so without prejudicing the State, as the affidavits were already in the record of

the proceedings on defendant's posttrial motion. <u>Cf. Luciani v. Bestor</u>, 106 Ill. App. 3d 878, 888-89

(1982) (pursuant to Supreme Court Rule 366(a)(1) (155 Ill. 2d R. 366(a)(1)), courts of review may

<u>sua   sponte</u> permit amendment of pleadings to conform with proof, if there is no prejudice). In this

situation, the failure to comply with such a technical rule should not cause defendant's postconviction

petition to be summarily dismissed. After all, this court has noted: "The trend of recent cases such

as <u>Boclair</u> and <u>Edwards</u> is to curtail trial courts' authority to dispose of postconviction petitions at

the first stage. Pleading niceties and procedural technicalities should not be considered, and early

dismissal is warranted only where a petition's allegations clearly lack substantive merit." <u>Stivers</u>, 338

Ill. App. 3d at 264.

The affidavits provide evidence that defendant did not understand his attorneys and that his

attorneys did not use an interpreter to advise defendant of his right to a jury instruction on involuntary

manslaughter. In its dismissal order, the trial court held that defendant's alleged inability to

understand English conflicted with the record and with the court's own observations and interactions

with defendant. The court erred in its decision. First, as the court stated, the record merely conflicts

with defendant's allegations. Conflict alone, however, is not enough to refute allegations at this stage.

Moreover, the court's own observations of defendant are not proper grounds for dismissal at this

stage, and the court's own interactions with defendant are proper grounds only if the record

demonstrates that those interactions refute the allegations. In this case, the record does not. From

Nos. 2--03--1016 & 2--03--1212 cons.

defendant's arraignment through his trial, the record reflects that defendant made three statements: "Yes"; "Yeah, a little bit"; and "I don't wish to testify." The only statement defendant made without the assistance of an interpreter was "Yeah, a little bit," when asked if he understood what was happening. The trial court, however, decided that "a little bit" was not enough and ordered an interpreter. Certainly, this interaction is insufficient to rebut defendant's allegations and, at this stage, is insufficient to demonstrate that defendant had enough understanding to exercise control over the decision to exclude the involuntary manslaughter instruction. Therefore, there is no reason to dismiss defendant's petition at this stage.

## V. CONCLUSION

Appeal No. 2--03--1016, the appeal from the August 5, 2003, dismissal of defendant's postconviction petition, is dismissed. In appeal No. 2--03--1212, defendant has stated the gist of a constitutional claim, based on the allegations in his petition that are not rebutted by the record, that counsel was ineffective for not tendering or recommending an involuntary manslaughter instruction. Therefore, defendant's petition is not frivolous or patently without merit. The trial court's order in appeal No. 2--03--1212 is hereby reversed, and this cause is remanded for second-stage proceedings.

No. 2--03--1016, Appeal dismissed.

No. 2--03--1212, Reversed and remanded.

O'MALLEY, P.J., and BYRNE, J., concur.

# United States of America

2-03-1016 & 2-03-1212 Cons.

**State of Illinois,
Appellate Court,
Second District,**

ss.

THE PEOPLE OF THE STATE OF ILLINOIS,

      Plaintiff-Appellee,

v.

RAMON J. DOMINGUEZ,

      Defendant-Appellant.

*I, ROBERT J. MANGAN, Clerk of the Appellate Court, in and for said Second Judicial District of the*

*State of Illinois, and the keeper of the Records and Seal thereof, do hereby certify that the foregoing is a*

*true, full and complete copy of the decision of the said Appellate Court in the above entitled cause of*

*record in my said office.*

*IN TESTIMONY WHEREOF, I have set my hand and affixed the*

*seal of the said Appellate Court, in Elgin, in said State, this*

__10th__ *day of* __March__ *, A.D. 20_05_.*

_____
*Clerk Appellate Court, Second District*

100427

**SUPREME COURT OF ILLINOIS
CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

September 29, 2005

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 100427 - People State of Illinois, petitioner, v. Ramon J.
            Dominguez, respondent.  Leave to appeal, Appellate
            Court, Second District.

The Supreme Court today DENIED the petition for leave to
appeal in the above entitled cause and entered the enclosed
supervisory order.

The mandate of this Court will issue to the Appellate Court
on October 21, 2005.

EXHIBIT F

NO.100427 - SUPERVISORY ORDER

      In the exercise of this Court's supervisory
authority, the Appellate Court, Second
District, is directed to vacate its judgment
in People v. Dominguez, case No.
2-03-1016 (03/10/05).  The appellate court
is ordered to reconsider its judgment in
light of People v. Blair, 215 Ill. 2d
427 (2005).

NOTICE
to text of this opinion may be changed
or corrected prior to the time for filing
a Petition for Rehearing or the disposition
of the same.

**FILED**

JUN 2 7 2006

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

Nos. 2--03--1016 & 2--03--1212 cons.

IN THE

## APPELLATE COURT OF ILLINOIS

### SECOND DISTRICT

**PUBL IN FULL**

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | **RECEIVED** |
| v. | ) ) ) | No. 99--CF--1830    JUN 2 8 2006 |
| RAMON J. DOMINGUEZ, | ) ) ) | Honorable    Stone & Associates James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

Following a jury trial, defendant, Ramon J. Dominguez, was convicted of first-degree murder

(720 ILCS 5/9--1(a)(1), (a)(2) (West 1998)) and sentenced to 28 years' imprisonment. On direct

appeal, we affirmed. People v. Dominguez, 331 Ill. App. 3d 1006 (2002) (Dominguez I). Defendant

then filed a postconviction petition, which the trial court summarily dismissed. Following the court's

refusal to hear his motion to reconsider, defendant appealed, arguing that the court erred in dismissing

his petition. We reversed and remanded, on the ground that the petition stated the gist of a claim of

ineffective assistance of counsel. People v. Dominguez, 356 Ill. App. 3d 872, 884 (2005)

(Dominguez II). However, we questioned whether the petition would survive but for the fact that,

at that time, res judicata was an invalid basis for summary dismissal. See Dominguez II, 356 Ill. App.

3d at 884, citing People v. Murray, 351 Ill. App. 3d 219, 221 (2004). Subsequently, in People v.

Blair, 215 Ill. 2d 427, 442 (2005), the supreme court held that res judicata and forfeiture were valid

EXHIBIT G

bases for summary dismissal. Thus, the court directed us to vacate our judgment in Dominguez II and to reconsider it in light of Blair. People v. Dominguez, 216 Ill. 2d 703 (2005). After receiving the parties' supplemental briefs on the impact of Blair, we vacate our judgment in Dominguez II and affirm the dismissal of defendant's petition.

## I. FACTS

In Dominguez I, we rejected defendant's arguments that, inter alia, his trial attorneys were ineffective for (1) failing to recommend that defendant submit a jury instruction on the lesser included offense of involuntary manslaughter; and (2) failing to move for a fitness hearing before trial. Dominguez I, 331 Ill. App. 3d at 1014-15, 1017. Subsequently, on June 5, 2003, defendant filed a timely postconviction petition. The petition claimed that defendant's trial attorneys were ineffective for (1) failing to tender or recommend that defendant tender a jury instruction on the lesser included offense of involuntary manslaughter; (2) failing to have the alleged murder weapon independently examined; (3) failing to use an interpreter when discussing with defendant the possibility of tendering the lesser included offense instruction; and (4) failing to investigate defendant's mental health. Additionally, the petition claimed that defendant was denied a fair trial because the trial court did not issue sua sponte the lesser included offense instruction, and that the State violated its obligation under Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by not disclosing that defendant was taking psychotropic medications.

On August 5, 2003, the trial court summarily dismissed the postconviction petition as frivolous and patently without merit. Specifically, the court ruled that defendant's trial counsel was not ineffective, because (1) the failure to tender the lesser included offense instruction was the result of an "all-or-nothing" trial strategy decided upon by defendant and his counsel; (2) the failure to have

Nos. 2--03--1016 & 2--03--1212 cons.

the weapon independently examined was a matter of trial strategy, and defendant did not provide an

affidavit of a potential witness or an explanation for its absence; (3) the alleged need for an interpreter

conflicted with the record and the court's own observations of and interactions with defendant, all of

which demonstrated that defendant was able to communicate effectively with his attorneys; and (4)

the claim as to counsel's failure to investigate defendant's mental health was not supported by any

evidence that the court did not already consider when it determined, on defendant's posttrial motion

for a fitness hearing, that there was no bona fide doubt about defendant's fitness. Additionally, the

court ruled that its failure to give the lesser included offense instruction sua sponte was not

erroneous, because one was not tendered. Finally, the court ruled that defendant's claim that the

State violated its obligation under Brady lacked merit because there was no evidence that defendant

was unaware of his being medicated or that he could not remember being given drugs. To the

contrary, the court found, defendant identified the drugs he ingested, and he detailed their effects.

On August 27, 2003, defendant submitted to the trial court a pro se notice of appeal from the

dismissal of his postconviction petition. On September 4, 2003, interpreting defendant's submission

as a request that a notice of appeal be filed on his behalf, the court directed the clerk to file one. The

same day, the clerk filed a notice of appeal (No. 2--03--1016), which was amended on September 17.

Also on September 4, however, defendant filed a motion to reconsider the dismissal of his petition.

The motion asserted that the court had applied the wrong standard and sought to incorporate into

the petition some Department of Corrections (DOC) medical records that allegedly constituted new

evidence pertaining to defendant's fitness. Attached to the motion were an affidavit of one of

defendant's trial attorneys, who stated, inter alia, that an interpreter was not used to advise defendant

of his right to a lesser included offense instruction, and an affidavit of defendant's priest, who stated

Nos. 2--03--1016 & 2--03--1212 cons.

that defendant's trial attorneys had ignored the priest's concerns that defendant was unable to understand his attorneys.

On October 1, 2003, the trial court denied defendant's request for a hearing on his motion to reconsider. The court indicated that it could not hear the motion, because the motion was filed within the 90-day period allowed for the court to review the postconviction petition without input from any party. On October 24, 2003, defendant filed a timely notice of appeal (No. 2--03--1212) from the court's refusal to hear the motion. We consolidated defendant's appeals.

## II. JURISDICTION

Before proceeding to the merits of this case, we must address our jurisdiction. An appellate court has a duty to consider its jurisdiction and to dismiss an appeal if jurisdiction is lacking. Ferguson v. Riverside Medical Center, 111 Ill. 2d 436, 440 (1985); Gilkev v. Scholl, 229 Ill. App. 3d 989, 992 (1992). Even if the parties do not raise the issue, we must determine our jurisdiction (Carlson v. Powers, 225 Ill. App. 3d 410, 413 (1992)) prior to deciding the merits of an appeal (Steel City Bank v. Village of Orland Hills, 224 Ill. App. 3d 412, 416 (1991)).

On September 4, 2003, defendant filed a notice of appeal from the dismissal of his postconviction petition and a motion to reconsider that dismissal. It is now settled that a defendant may move to reconsider the summary dismissal of his postconviction petition. Blair, 215 Ill. 2d at 451. Here, however, the trial court suggested that defendant's motion was untimely. We disagree.

The trial court indicated that the motion to reconsider was untimely because it was filed within the 90-day period allowed for the court to review the postconviction petition without input from any party. See 725 ILCS 5/122--2.1(a) (West 2002). The court, however, appears to have miscounted. Indeed, defendant's September 4, 2003, motion was filed 91 days after defendant's June 5, 2003,

-4-

Nos. 2--03--1016 & 2--03--1212 cons.

petition. Thus, assuming that a motion to reconsider may not be filed within the 90-day period, defendant's motion was not untimely on that basis.

Further, we note that defendant filed his motion to reconsider within 30 days of the dismissal. The summary dismissal of a postconviction petition is a final judgment in a civil proceeding. 725 ILCS 5/122--2.1(a)(2) (West 2002); People v. Wilson, 37 Ill. 2d 617, 619-20 (1967). A party may move to reconsider a final judgment in a civil proceeding within 30 days of the entry of that judgment. 735 ILCS 5/2--1203(a) (West 2002); see also In re J.D., 317 Ill. App. 3d 445, 448 (2000). Therefore, defendant's motion was timely.

As a result of defendant's timely motion to reconsider, however, the notice of appeal from the dismissal of defendant's postconviction petition, and the amended notice, must be stricken. Although postconviction proceedings are civil (Wilson, 37 Ill. 2d at 619-20), appeals therefrom shall be in accordance with the rules governing criminal appeals (134 Ill. 2d R. 651(d)). According to those rules, defendant's timely motion nullified the notice of appeal and the amended notice that were filed before the disposition of the motion. 188 Ill. 2d R. 606(b); see People v. Willoughby, 362 Ill. App. 3d 480, 482 (2005). Therefore, appeal No. 2--03--1016, the appeal from the dismissal of defendant's petition, is dismissed.

Nonetheless, we have jurisdiction in appeal No. 2--03--1212, the appeal from the refusal to hear defendant's motion to reconsider. Further, in that appeal, we may review the dismissal of defendant's postconviction petition. Although the notice of appeal specifically assigns error solely in the refusal to hear the motion, the dismissal of the petition was a step in the procedural progression leading to the refusal to hear the motion. Hence, the dismissal is reviewable. Burtell v. First Charter Service Corp., 76 Ill. 2d 427, 435-36 (1979); see also People v. Jones, 207 Ill. 2d 122, 138 (2003).

Nos. 2--03--1016 & 2--03--1212 cons.

### III. THE SUMMARY DISMISSAL OF DEFENDANT'S POSTCONVICTION PETITION

Although the trial court explicitly dismissed defendant's postconviction petition as frivolous and patently without merit (725 ILCS 5/122--2.1(a)(2) (West 2002)), defendant contends that the court applied the wrong standard to the dismissal. Specifically, defendant argues that the court explicitly stated the standard applicable to second-stage review of a postconviction petition while inexplicably omitting the "gist of a constitutional claim" standard that applies at the first stage. See People v. Gaultney, 174 Ill. 2d 410, 418 (1996).

Although we addressed defendant's contention in Dominguez II, 356 Ill. App. 3d at 877, we need not do so here. Assuming that the trial court applied the wrong standard, we are not required to reverse and remand. Indeed, we may affirm, on any proper ground, a procedurally proper summary dismissal that was based on an improper ground. See People v. Quigley, Nos. 2--04--0750 & 2--04--0751 cons., slip op. at 3 (June 23, 2006). Here, as the trial court summarily dismissed the postconviction petition within 90 days and without the input of any party, the dismissal was procedurally proper. See Quigley, slip op. at 3. Thus, we may apply the proper standard in the first instance and affirm if, in accordance with that standard, the summary dismissal is justified.

In Dominguez II, 356 Ill. App. 3d at 884, we determined that defendant's postconviction petition stated the gist of a claim that his trial attorneys were ineffective for failing to tender or recommend that defendant tender a jury instruction on the lesser included offense of involuntary manslaughter. Although we noted that, on direct appeal, we had rejected "the same claim," we observed that res judicata was an invalid basis for summary dismissal. Dominguez II, 356 Ill. App. 3d at 884. Thus, we reversed and remanded. However, as we have noted here, the supreme court in Blair held that the determination of a gist of a constitutional claim is subject to the application of

-6-

res judicata, as well as forfeiture. See Blair, 215 Ill. 2d at 445-46. Thus, we now consider the impact of Blair.

In his supplemental brief, defendant appears to concede that res judicata and forfeiture would preclude his postconviction petition. However, he asserts that we should invoke the "fundamental fairness" exception to res judicata and forfeiture. See Blair, 215 Ill. 2d at 450. Specifically, he asserts that it would be unfair to prevent him from litigating (1) whether trial counsel was ineffective for failing to tender or recommend the jury instruction on the lesser included offense; and (2) whether trial counsel was ineffective for failing to investigate defendant's mental health, and, alternatively, whether the State violated Brady by not disclosing that defendant was taking psychotropic medications.

Whether counsel was ineffective for failing to tender or recommend the instruction was addressed on direct appeal (Dominguez I, 331 Ill. App. 3d at 1014-15) and thus is subject to res judicata (People v. Williams, 209 Ill. 2d 227, 233 (2004)).[1] In this context, the "fundamental fairness"

---

[1]On direct appeal, defendant specifically asserted that counsel was ineffective only for failing to recommend the instruction (Dominguez I, 331 Ill. App. 3d at 1014-15); he did not precisely contend that counsel was ineffective for failing to tender the instruction. Nevertheless, we rejected the essence of the latter contention when we observed that "[a] defendant, rather than his counsel, has the right to make the ultimate decision whether to tender an instruction on a lesser-included offense." Dominguez I, 331 Ill. App. 3d at 1013. In any event, because defendant's postconviction claim that counsel was ineffective for failing to tender or recommend the instruction is virtually identical to his specific claim on direct appeal that counsel was ineffective for failing to recommend the instruction, we deem the postconviction claim subject to res judicata. See People v. Simpson, 204

Nos. 2--03--1016 & 2--03--1212 cons.

exception "has been applied most typically where the right relied upon in the post-conviction proceedings has been recognized for the first time after the direct appeal." People v. Shriner, 262 Ill. App. 3d 10, 13 (1994). At a minimum, there must be some compelling fact beyond the mere allegation that, on direct appeal, the issue was resolved incorrectly. See Shriner, 262 Ill. App. 3d at 13-15 (and cases cited therein).

Here, in essence, defendant merely reiterates that his trial counsel was ineffective for failing to tender or recommend the instruction. That is, he essentially asserts only that we erred in rejecting that claim when he presented it on direct appeal. As noted, however, that is not enough. Indeed, to determine "that a petitioner may avoid application of the res judicata doctrine by claiming that an issue was incorrectly decided in the direct appeal would eviscerate the res judicata doctrine's application to post-conviction proceedings." Shriner, 262 Ill. App. 3d at 15. Clearly, defendant presents no compelling justification for relaxing the strict application of res judicata.

Defendant does point out that, in dismissing his postconviction petition, the trial court stated that it was sympathetic to defendant's position and indeed was heartbroken by the fact that, had the instruction been tendered, defendant may well have been convicted of involuntary manslaughter instead of first-degree murder. We do not dispute that the failure of the all-or-nothing strategy was unfortunate for defendant. However, as noted on direct appeal (Dominguez I, 331 Ill. App. 3d at 1015), that misfortune does not mean that counsel was ineffective for pursuing that strategy, and it certainly does not present a fundamental unfairness that warrants relaxing res judicata.

---

Ill. 2d 536, 559 (2001) ("A post-conviction petitioner may not avoid the bar of res judicata simply by rephrasing *** issues previously addressed on direct appeal").

Defendant next submits that fundamental fairness requires that he be allowed to litigate that counsel was ineffective for failing to investigate defendant's mental health and, alternatively, that the State violated Brady. At least as they were stated in the postconviction petition, these claims are substantially different from the second claim noted above that we addressed on direct appeal, i.e., that counsel was ineffective for failing to move for a fitness hearing before trial. See Dominguez I, 331 Ill. App. 3d at 1017. Thus, these claims are subject not to res judicata but to forfeiture. See Williams, 209 Ill. 2d at 233. In that context, the "fundamental fairness" exception requires the defendant to show "cognizable cause" for his failure to raise the claim previously and "actual prejudice" resulting from the error complained of. See People v. Jackson, 205 Ill. 2d 247, 274 (2001). "Cause" is an objective factor external to the defense that impeded the defendant's efforts to raise the claim previously, and "prejudice" is an actual and substantial disadvantage that infected the entire trial with constitutional error. Jackson, 205 Ill. 2d at 274-75. Here, defendant does not even set out this standard, much less attempt to apply it. Thus, defendant's point that "fundamental fairness" should excuse his forfeiture is itself forfeited. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.

In any event, the only fact defendant submits that could even approach "cause" is that, despite his repeated requests, he could not obtain the DOC records until he had filed his postconviction petition. Assuming "cause," however, he does not establish "prejudice," because those records do not satisfy the standard for granting a new trial. See People v. Orange, 195 Ill. 2d 437, 450 (2001). Specifically, they are insufficient because they are merely cumulative. See Orange, 195 Ill. 2d at 451. Indeed, defendant asserts that the records demonstrate that he was taking psychotropic medications that produced auditory hallucinations and clouded his judgment. However, on defendant's posttrial

Nos. 2--03--1016 & 2--03--1212 cons.

motion for a fitness hearing, a psychologist testified that defendant was taking psychotropic medications and exhibiting auditory hallucinations and an inability to process information. We detailed that testimony on direct appeal. Dominguez I, 331 Ill. App. 3d at 1011-12. Thus, to the extent that the unavailability of the DOC records was "cause" for defendant's failure to raise his postconviction claims on direct appeal, the claimed errors certainly caused him no "prejudice."

## IV. CONCLUSION

Dominguez II is vacated. Appeal No. 2--03--1016 is dismissed. In appeal No. 2--03--1212, the judgment of the circuit court of Lake County is affirmed.

No. 2--03--1016, Appeal dismissed.

No. 2--03--1212, Affirmed.

O'MALLEY and BYRNE, JJ., concur.

# United States of America

2-03-1016 & 2-03-1212 Cons.

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

**State of Illinois,**
**Appellate Court,**   ss.   v.
**Second District,**

RAMON J. DOMINGUEZ,

Defendant-Appellant.

*I, ROBERT J. MANGAN, Clerk of the Appellate Court, in and for said Second Judicial District of the State of Illinois, and the keeper of the Records and Seal thereof, do hereby certify that the foregoing is a true, full and complete copy of the decision of the said Appellate Court in the above entitled cause of record in my said office.*

*IN TESTIMONY WHEREOF, I have set my hand and affixed the seal of the said Appellate Court, in Elgin, in said State, this*

27th ~~day of~~    June    , A.D. 20 06.

Clerk Appellate Court, Second District

(RO-2131 — 5M — 3/02)

103148

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2006

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103148 - People State of Illinois, respondent, v. Ramon J.
            Dominguez, petitioner.  Leave to appeal, Appellate
            Court, Second District.

The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court

on January 4, 2007.

EXHIBIT H